Sandra Eve **HANN**, Appellant–
Respondent,

v.

Daniel Patrick **HANN**, Appellee–
Petitioner.

No. 43A04–9503–CV–77.

Court of Appeals of Indiana.

Sept. 20, 1995.

Transfer Denied Feb. 29, 1996.

John S. Bloom, Bloom Gage Gates & Whiteleather, Columbia City, for Appellant.

Stanley E. Pequignot, Jay A. Rigdon, Rockhill, Pinnick, Pequignot, Helm & Landis, Warsaw, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

This is an interlocutory appeal wherein Respondent–Petitioner Sandra Eve Hann (Sandra) appeals the trial court's determination regarding the division of marital property between herself and Petitioner–Appellee Daniel Patrick Hann (Daniel) in their pending marriage dissolution proceeding. We are asked to consider whether Daniel's accrued but unmatured stock options are marital property subject to division.

We affirm.

### ISSUE

The following issue of first impression is raised in this appeal: Whether the trial court properly divided the marital property of the parties, particularly Daniel's unvested stock options acquired during the marriage, but not exercisable until dates subsequent to the final decree of dissolution.

### FACTS AND PROCEDURAL HISTORY

The parties were married on May 27, 1979, and separated on or about January 17, 1994. Daniel filed his petition for dissolution on January 31, 1994. Although there were two children born of the marriage, this appeal involves property division issues only. On August 19, 1994, Daniel filed a motion for summary judgment seeking a determination, as a matter of law, that only vested stock options which were exercisable on the date of filing the dissolution petition should be considered as marital property subject to division pursuant to IND.CODE 31–1–11.5–11 (1994). Contemporaneous with his motion, Daniel submitted supporting affidavits and various stock option plans and grants of stock made pursuant to such plans.

The parties filed their waiver of final hearing requesting the court to enter a dissolution decree and approve their written agreed Partial Property Settlement, Custody and Support Agreement (hereinafter "Agreement"). The parties further requested that the court bifurcate the proceeding and enter a summary disposition as to the issues settled in the Agreement, holding open for further consideration the division of the remainder of the marital property. On September 12, 1994, the court entered the dissolution decree incorporating the parties' Agreement.

On October 6, 1994, the parties entered into a stipulation of fact to be included in the court's consideration of the pending motion for summary judgment. The parties stipulated that Daniel was employed by Biomet, Inc. as Vice–President, Secretary and General Counsel on July 3, 1989. On October 21, 1994, the court granted Daniel's motion for summary judgment. The court's order in the chronological case summary provided as follows:

> ... The court finds that there is no material issue of fact necessary for the Court's decision and therefore that the granting of summary judgment is appropriate in this matter and the Court finds upon the facts before it that only the vested stock options granted to the petitioner by employer, Biomet, Inc. that are exercisable upon the date of filing or that become exercisable before the entry of the decree of dissolution on September 12, 1994, are marital property subject to division by the Court pursuant to I.C. 31–1–11.5–11 and further that in making distribution of any stock options that tax consequences to the petitioner upon exercise of such options must be considered. Summary judgment is entered accordingly.

(R. 6–7). Sandra now brings this interlocutory appeal from the above order. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### Standard of Review

█ Before reaching the merits of this appeal, we recite the familiar standard of review by which we review the granting of motions for summary judgment. When reviewing the trial court's ruling on a motion

for summary judgment, this court applies the same standard as the trial court. *American Family Mut. Ins. Co. v. Dye* (1994), Ind.App., 634 N.E.2d 844, 846 *reh'g denied, trans. denied.* Thus, no deference is given to the trial court's judgment. *Foreman v. Jongkind Bros., Inc.* (1994), Ind.App., 625 N.E.2d 463, 467, *reh'g denied.*

■ Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *O'Neal v. Throop* (1992), Ind.App., 596 N.E.2d 984, 986, *trans. denied.*

■■ On appeal, we will carefully scrutinize the trial court's determination to ensure that the non-prevailing party is not improperly denied his day in court. *Perryman v. Huber, Hunt & Nichols, Inc.* (1994), Ind. App., 628 N.E.2d 1240, 1243, *trans. denied.* We consider only the materials designated to the trial court to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. T.R. 56(C). We liberally construe all inferences and resolve all doubts in the non-movant's favor.

Unvested, Unmatured Stock Options

Sandra and Daniel managed to divide the majority of their property, both personal and real, and arrange for the custody of their two children by agreement. The one issue upon which the parties diverge is the distribution of Daniel's unvested, unmatured stock options.

Sandra contends that the trial court erred in granting Daniel's motion for summary judgment. Specifically, she argues that Daniel's stock options should be considered as "marital property" and divided accordingly. Sandra does not dispute the facts material to this appeal. Rather, she argues that, as a matter of law, a portion of Daniel's stock option grants should be considered as marital property.

Daniel, an attorney, moved his family to Warsaw, Indiana, in July of 1989, upon accepting employment with Biomet, Inc., in the capacity of Vice–President, Secretary and General Counsel. As the parties stipulated, Daniel was employed by Biomet on July 3, 1989. Daniel's first stock option was granted concurrent with the commencement of his employment. These initial stock options dated July 5, 1989, were terminated by Biomet on February 21, 1990, and replaced with other options on February 21, 1990. The remaining stock options were all granted to Daniel by Biomet before the date of final separation. The relevant stock options granted to Daniel by Biomet periodically during his employment with Biomet are as follows:

(a) February 21, 1990, Stock Option: On January 31, 1994, Daniel was the owner of a stock option agreement granted to him by Biomet, Inc. pursuant to the Employee Stock Option Plan (hereinafter "1990 Stock Option"). After the grant of the option, Biomet declared two 2:1 stock splits which pursuant to paragraph 6(g) of the Biomet, Inc. Employee Stock Option Plan, modified the number of shares subject to the option vesting schedule from 3,125 shares to 12,500 shares and the option price from $20.25 per share to $5.06 per share. On January 31, 1994, pursuant to the terms of the 1990 Stock Option, Daniel was fully vested in 12,500 unexercised options to purchase Biomet stock. These options were exercisable from February 21, 1993, to February 20, 1995.

(b) June 25, 1992, Stock Option: On January 31, 1994, Daniel was the owner of a stock option agreement granted to him by Biomet, Inc. pursuant to the Employee Stock Option Plan (hereinafter "1992 Stock Option"). On January 31, 1994, pursuant to the terms of the 1992 Stock Option, Daniel was fully vested in 1,250 unexercised options at $15.00 per share. These options were exercisable from June 25, 1993, to June 24, 1995.

(c) July 21, 1993, Stock Option: On January 31, 1994, Daniel was the owner of a stock option agreement granted to him by Biomet, Inc. pursuant to the Employee and

Non–Employee Directors Stock Option Plan (hereinafter "1993 Stock Option"). On January 31, 1994, pursuant to the terms of the 1993 Stock Option, Daniel was not vested in any unexercised options to purchase Biomet stock under the terms of the 1993 Stock Option. The stock option was for 25,000 shares, but was not vested nor matured.

(R. 13–49). In granting Daniel's motion for summary judgment, the trial court determined that only the vested stock options granted to Daniel by Biomet that were exercisable upon the date of filing the dissolution petition, or that became exercisable prior to the final hearing on the dissolution proceeding, were marital property subject to division pursuant to I.C. 31–1–11.5–11. Therefore, the trial court found that 12,500 shares of the 1990 Stock Option and 1,250 shares of the 1992 Stock Option were to be included in the marital pot. Therefore, Sandra takes issue with the trial court's treatment of the stock options which were accrued but unmatured and unvested at the time of dissolution. Specifically, the 12,500 unvested shares of the 1990 Stock Option; the 8,750 unvested shares of the 1992 Stock Option; and the entire grant of 25,000 shares under the 1993 Stock Option.

On January 31, 1994, upon the filing of the petition for dissolution, Daniel was not vested in the aforementioned options, nor were any of those option shares exercisable. Therefore, these remaining option shares were unmatured, unexercised and Daniel was not vested in the plan.[1]

### Division of Marital Property

■ Indiana law provides that when dividing property in a dissolution proceeding, the court shall include property "owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to the final separation of the parties, or acquired by their joint efforts." I.C. 31–1–11.5–11(b) (1994). This "one pot" theory specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award. *Ross v. Ross* (1994), Ind.App., 638 N.E.2d 1301, 1303. Only property acquired after the final separation date of the parties is excluded from the marital assets. *Id.*

■ Although there are no Indiana cases precisely on point as to whether unvested and unmatured stock options should be treated as marital property, since shortly after the inception of Indiana's Marriage Dissolution Act, our appellate courts have often construed the definition of "property" within the meaning of the various amendments to I.C. 31–1–11.5–2(d) (1988). We have consistently held that only property in which the party has a vested interest at the time of dissolution may be divided as a marital asset.[2] I.C. 31–1–11.5–2 has undergone several legislative amendments. Prior to the 1980 amendment which added section (d), the section did not include a specific definition of the word "property." In 1985, section (d) was again amended to include a present vested interest in a pension as marital property subject to division. The current version of I.C. 31–1–11.5–2(d) defines property as follows:

> (d) The term "property" means all the assets of either party or both parties, including:
>
> (1) a present right to withdraw pension or retirement benefits;

---

1. In considering whether these stock options are subject to equitable distribution, we denominate Daniel's options as "unmatured" in the sense that they were not exercisable at the time of dissolution. We further denominate the options as "unvested" in the sense that the options are subject to forfeiture in the event that Daniel dies, is fired or otherwise terminates his employment with Biomet. Daniel has no "vested" interest in the options because they may be exercised only if he is in the employ of Biomet at the time the exercise period begins. It is this uncertainty that makes this option a contingent interest rather than a vested interest.

2. *See Wilcox v. Wilcox* (1977), 173 Ind.App. 661, 365 N.E.2d 792; *Savage v. Savage* (1978), 176 Ind.App. 89, 374 N.E.2d 536; *Hiscox v. Hiscox* (1979), 179 Ind.App. 378, 385 N.E.2d 1166; *Sadler v. Sadler* (1981), Ind.App., 428 N.E.2d 1305. The most recent affirmation of this long-standing principle was announced in *Mullins v. Matlock* (1994), Ind.App., 638 N.E.2d 854, 856, *trans. denied* ("A chose in action, not vested but rather contingent and speculative in nature and in value, is not capable of division and thus not marital property subject to equal distribution under the Dissolution of Marriage Act").

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment, or that are vested, as that term is defined in Section 411 of the Internal Revenue Code, but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a), acquired during the marriage, that is or may be payable after the dissolution of marriage.

I.C. 31–1–11.5–2(d). Therefore, in order for a future pension benefit to be considered marital property in Indiana, the right to the pension must not be contingent upon continued future employment. *See Coffey v. Coffey* (1995), 649 N.E.2d 1074 (vested retirement pensions which are not forfeited upon termination of employment yet are contingent upon the retiree's survival are marital "property" within the meaning of I.C. 31–1–11.5–2(d)). We find pension law in the context of marital dissolutions to be closely analogous to the issue before us. Similar to the "unvested" nature of Daniel's stock options, a pension is unvested where the right to be paid is subject to forfeiture if the employment relationship terminates. Aside from this useful analogy, stock options are not like pensions in any significant sense. In this appeal, we consider the treatment of stock options for purposes of dividing marital property in dissolution proceedings. In this context, a stock option is the right to buy a specific stock within a designated time period at a designated price if the option holder so chooses.

Sandra concedes that the great weight of the Indiana authority available for guidance on this issue is against her; however, she urges us to abandon precedent and adopt the rationale employed in several other jurisdictions. Judge Chezem, in her dissent, points to several cases from other states, some of them from community property states, that

treat stock options as marital property. To be sure, the treatment of these future benefits varies from jurisdiction to jurisdiction. There are also several jurisdictions which hold that potential future benefits arising out of one's employment should not be treated as marital property and therefore should not be subject to equitable distribution. *See Wikel v. Wikel* (1992), App., 168 Wis.2d 278, 483 N.W.2d 292 (only portion of stock option which was exercisable as of the first day of trial in the parties' dissolution proceeding should be treated as part of the marital estate); *Hall v. Hall* (1987), 88 N.C.App. 297, 363 S.E.2d 189 (stock options which are not exercisable as of the date of separation and which may be lost as a result of event occurring thereafter are not vested and therefore should be treated as separate property of the spouse for whom they may vest at some time in the future)[3]; *In re Marriage of Miller* (1994), Colo.App., 888 P.2d 317, *reh'g denied, cert. pending* (those portions of stock options and restricted stock granted to Husband by his employer which may become available contingent upon Husband's continued employment after the dissolution do not constitute marital property. Rather, those options constitute potential future income not subject to division). In *In re Marriage of Evans* (1981), Ill., 85 Ill.2d 523, 426 N.E.2d 854, the Supreme Court of Illinois held that the lower court's failure to characterize Husband's unvested stock as marital property was not error where the parties failed to introduce sufficient evidence to establish a value for the stock. Although the court did not opine as to the circumstances, if any, in which the right to future payments of income should be treated as marital property, the court said the following in dicta:

> ... the personal right of an employee to receive future payments from his employer is not susceptible to being divided in the same sense that real estate or personal

---

**3.** Specifically, in *Hall*, the stock options were granted to Husband by his employer as a benefit of his employment. At the time of dissolution the options were not yet exercisable and were subject to cancellation in the event of Husband's termination from his employment. Only those options that were presently vested were exercisable for a limited period of time in the event

Husband left the Company for reasons other than retirement, disability or death. In this case of first impression, the court of appeals held that the trial court erred in treating the unvested unexercised options as marital property. The court of appeals held that only the options that were exercisable on the date of separation should be classified as marital property. *Id.*

property may be. Again, if the payment of benefits is contingent upon future events, such as the continuation of employment, a present award based on the discounted value of future payments to the employed spouse will prove excessive if the amount of benefits which he actually receives is less than the amount which was assumed.

*Evans,* 55 Ill.Dec. at 532, 426 N.E.2d at 857.

■ Daniel's 1993 Stock Option is not a presently vested property interest subject to distribution as a divisible marital asset. Daniel was granted the stock options as a benefit of his employment with Biomet, and any future value to be realized by the exercise of these options (when and if they become exercisable) is wholly contingent upon Daniel's continued employment with Biomet. If Daniel terminates his employment with Biomet prior to the date the stock options become exercisable, he has no right under the Stock Option Plan to exercise that option. As such, the stock options not exercisable as of the date of separation, and which will become exercisable at a particular date in the future conditioned upon Daniel's continued employment, are not subject to division as marital property.

We find that the treatment most consistent with the statutory scheme currently in place in Indiana is to classify only those stock options granted to an employee by his or her employer which are exercisable upon the date of dissolution or separation which cannot be forfeited upon termination of employment as marital property. Given our legislature's position on unvested pension benefits and Indiana's equitable distribution means for the distribution of marital property, we find that our treatment of Daniel's stock options is fully in accord with Indiana law on the subject of division of future income interests.

## CONCLUSION

Based on the foregoing, having found that there is no genuine issue of material fact and that the trial court properly applied the law to the undisputed facts, we conclude that the trial court properly granted Daniel's motion for summary judgment. Accordingly, the trial court is affirmed.

SHARPNACK, C.J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The issue before us today is whether accrued but unmatured stock options are marital property for purposes of a divorce settlement. Because this is a case of first impression in Indiana, I urge the Majority to consider the following: Sandra takes issue with the trial court's failure to include 12,500 of the 1990 stock options, 8,750 of the 1992 stock options, and 25,000 of the 1993 stock options in the marital pot. For several reasons, I do not agree that as a matter of law we should perpetuate the fiction that the options are not the property of both parties to the marriage. First, it is not disputed that Sandra participated in the marriage in such a way so as to make it possible in part for her husband to be placed in a situation wherein he could be compensated as an executive. I agree with our supreme court in that in many marriages the joint effort of both spouses are invested so that one of them may earn assets for the marriage as a whole. *In re the Marriage of Adams* (1989), Ind., 535 N.E.2d 124, 126, *reh. denied* (the asset earned was a pension asset). The stock options themselves, though unmatured, are a benefit earned by both parties in this marriage.

Second, the majority, in essence, treats the stock options identical to pension benefits. There is a significant difference between pension benefits and deferred compensation. The Incentive Stock Option Plan ("ISOP") offered by Biomet is pure deferred compensation. They are the golden handcuffs which tie Mr. Hann to the company. They are more akin to money in the bank than to pension assets. A pension benefit, on the other hand, is an employer-sponsored plan designed solely to provide for employee retirement needs. Historically, pensions have not been used as compensation or in lieu of compensation. *Cf. Leisure v. Leisure* (1993), Ind., 605 N.E.2d 755 (characterizing pension benefits as deferred compensation). Unlike ISOP's, most pension plans are subject to

strict federal pension laws which determine their vesting schedules and forfeiture rules. Moreover, nonqualified but fully vested plan assets (i.e., "nonqualified deferred compensation" or "457 plan assets") remain subject to forfeiture and are nevertheless routinely divided pursuant to qualified domestic relations orders. Internal Revenue Code § 457.

On the other hand, in today's corporate climate, many executives receive significant portions of their earnings through stock options. The options themselves, though may be "unvested" or unexercised, are the present compensation the executive receives in exchange for services. This is a typical executive compensation package. Had Mr. Hann not been eligible to participate in Biomet's ISOP, Sandra would have shared in his presumably higher income as each year passed. Rather, both she and Mr. Hann agreed to forego some annual income and be paid in stock options instead. In essence, Mr. Hann bargained marital income as consideration for the options, thus depriving the family of the present use of those funds. *See Gnerlich v. Gnerlich* (1989), Ind.App., 538 N.E.2d 285, 286, *trans. denied.* Although the plan document for the ISOP does not contain a provision which makes stock options consideration in exchange for a lesser salary, the reality of this type of plan is that the options are indeed a form of consideration in exchange for a lesser salary on the part of the plan participants.

Third, the general test in determining whether a pension asset is marital property is: (1) whether there is a present right to withdrawal, and (2) whether the asset would be forfeited upon the employee's termination from employment. I.C. 31–1–11.5–2(d). It should first be noted that this part of the statute applies specifically to pension benefits, which are not the same as ISOP benefits. But analogously, there is certainly a present right to own the stock options granted to Mr. Hann. This is similar to a right to withdrawal in a pension plan.

However, with an ISOP, the benefit is bifurcated. The option itself is an independent benefit which belongs to the plan participant. This benefit should be considered marital property. The underlying stock is not owned by the participant until the option is exercised. This does not mean that ownership ratios on the overlying option to purchase cannot be assigned in a divorce property settlement. Mr. Hann, in receiving the option, received a tangible benefit. He was given a reason to remain with Biomet, a reason to forego a possible higher salary, and the security of knowing that his income was invested in a company whose outcome over which, as an executive, Mr. Hann had some degree of control.

There is also great doubt about whether Mr. Hann's benefits under the ISOP would be forfeited upon his termination. The plan document in effect for all three options gives great deference to the committee: "§ 6(e) *Time of Exercise.* The Committee may, in its discretion, provide that an option granted under the Plan may not be exercised in whole or in part until the expiration of such period or periods of time as may be specified by the Committee." In other words, the committee has the ability to accelerate the options at any time, including prior to or at the same time as a termination. The 1993 Plan Document clarifies this discretionary power in the committee, adding,

> [P]rovided, however, that any such limitation on the exercise of an option contained in an option agreement may be rescinded, modified, or waived by the Committee, in its sole discretion, at any time and from time to time after the date of grant of such option so as to accelerate the time in which the option may be exercised.

Additionally, all three of the Plan Documents contain § 6(f), the section dealing with expiration of the options upon termination of employment. That section purports to cause immediate exercise of unmatured but accrued options upon the termination of the employee-participant. However, that section is subordinate to section 6(e) because it is "subject to the provisions of paragraph 6(d) and paragraph 6(e)." The committee has the authority and discretion to trigger an immediate acceleration of the maturation schedule for accrued but unmatured options at any time. Clearly, there is no guarantee of forfeiture upon an employee's termination.

Once again, reality in the world of the ISOP is that unless the plan participant was terminated as a result of poor performance or misconduct, there most likely would not be a forfeiture of options. In fact, this provision is designed to protect plan participants in the event of a hostile takeover of the corporation. It allows for immediate acceleration of the options maturation schedule.

Fourth, stock options are "property" within the meaning of I.C. 31–1–11.5–2(d). That statute defines "property" as "all of the assets of either party or both parties." *Id.* The statute went on to specifically enumerate pensions. Some general rules of statutory construction are helpful. Where the term "including" is used in a statute, it implies that the list or items enumerated are non-exclusive and are merely examples. *Caylor–Nickel v. Dept. of State Rev.* (1991), Ind.App., 569 N.E.2d 765, 771–772, *judgment aff'd by Indiana Dept. State Rev. v. Caylor–Nickel, P.C.* (1992), Ind., 587 N.E.2d 1311. In *Gnerlich*, 538 N.E.2d 285, we held that disability payments were "property" subject to distribution upon dissolution. We examined the nature of different types of "property" in relation to I.C. 31–1–11.5–2(d) and held:

> The value of William's disability pension is readily ascertainable and susceptible to division. Its nature is no more contingent or speculative than an ordinary retirement (longevity) pension—except for one contingency. The benefits depend on William's continued disability. However, because Faye was awarded a percentage of each payment, her interest expires with William's. This contingency does not make William's disability pension speculative or conjectural such that it may not be characterized as a marital asset under the rationale of the *McNevin* [*v. McNevin* (1983), Ind.App., 447 N.E.2d 611] *supra* and *Murphy* [*v. Murphy* (1987), Ind.App., 510 N.E.2d 235] *supra*, decisions.

*Id.* at 288 (distinguished from worker's compensation benefits in *Leisure*, 605 N.E.2d 755). Stock options, like disability payments, are marital property governed by the statute.

Assigning an ownership ratio to the options owned on the date the petition of dissolution is filed (or the date of the final dissolution hearing) may practically be accomplished similar to how pension assets are divided. The parties can certainly negotiate the terms of the agreement. For example, Sandra might agree to take a lump sum in lieu of her assigned ownership ratio. Valuation is not necessary because until the options mature their value is only the inherent value of the option itself. Or, the parties may wish to wait until the options have matured to divide their proceeds. In such case, Sandra would be entitled to her percentage of the options as they mature. They would be valued on their respective dates of maturity. Both parties, then, incur the risk of loss.

The plan participant would not be forced to exercise options not attributable to the spouse's portion. For example, Mr. Hann could exercise only the options attributable to Sandra's ratio amount upon the options' respective maturities. He would therefore not be forced to make an undesirable economic decision for himself in the event the stocks were not performing well at their respective dates of maturity. Nevertheless, the method of the property settlement would be determined in advance by the divorce decree.

Finally, it is useful to look to other jurisdictions and their treatment of accrued but unmatured stock options for purposes of dividing marital property. Many jurisdictions treat accrued but unmatured stock options as marital property subject to division upon dissolution. *See, e.g., In re Marriage of Hug* (1984), 154 Cal.App.3d 780, 201 Cal.Rptr. 676; *Green v. Green* (1985), 64 Md.App. 122, 494 A.2d 721; *Smith v. Smith* (1984), Mo.App., 682 S.W.2d 834; *Callahan v. Callahan* (1976), 142 N.J.Super. 325, 361 A.2d 561; *In re Marriage of Moody* (1983), 119 Ill.App.3d 1043, 75 Ill.Dec. 581, 457 N.E.2d 1023; *In re Marriage of Isaacs* (1994), 260 Ill.App.3d 423, 198 Ill.Dec. 169, 632 N.E.2d 228, *appeal denied; Chen v. Chen* (1987), 142 Wis.2d 7, 416 N.W.2d 661, *review denied.*

In a case decided by the Washington Court of Appeals, the trial court allocated unmatured stock options. The court held that the accrued but unmatured stock options were to be considered marital property for division, if and when exercised. *In re Short* (1993), 71

Wash.App. 426, 859 P.2d 636 (affirmed in part and reversed in part, *In re Short* (1995), Wa.S.Ct., 125 Wa.2d 865, 890 P.2d 12). The court reasoned that an option to purchase was a bilateral contract. The employer was legally bound to honor the option agreement (absent termination). The employee's right of election was viewed as presumptively acquired for the marriage community. The separation and divorce of the parties had no bearing on the employer's legal obligation to honor the agreement.

The Washington Supreme Court thereafter modified the holding of the appeals court in *Short* when it delineated between stock options granted for present employment services and options granted for future employment services. *In re Short*, 125 Wa.2d 865, 890 P.2d 12. Nevertheless, the gravamen of "vesting" was not an issue in determining ownership rights upon marital dissolution. Rather, as I agree, the gravamen should be whether the options are present, albeit deferred compensation, or future compensation.

The appeals court in *Short* also noted that the tax laws are not "the tail that wags the dog." In other words, because tax laws allow for future recognition of current earnings, it does not follow that the stock options are not marital property for purposes of division pursuant to a dissolution. I would add that the income, when recognized for tax purposes, is ordinary income, just as if Mr. Hann would have been paid salary in lieu of his options. If the gain from options were anything other than compensation, it would seem to merit capital gain treatment under the tax laws.

It is for these reasons that I would reverse the trial court's grant of summary judgment and remand to the trial court for an assignment of ownership ratios on the stock options.