Mila Jane WALLACE, Appellant–Respondent,

v.

Chris G. WALLACE, Appellee–Petitioner.

No. 29A05–9806–CV–317.

Court of Appeals of Indiana.

Aug. 13, 1999.

Rehearing Denied Oct. 27, 1999.

Nancy L. Cross, Miroff, Cross & Kline-
man, Indianapolis, Indiana, Attorney for Ap-
pellant.

Deborah L. Farmer, John D. Proffitt,
Campbell Kyle Proffitt, Carmel, Indiana, At-
torneys for Appellee.

**OPINION**

FRIEDLANDER, Judge

Mila Jane Wallace appeals the trial court's
division of marital assets in her dissolution
action against Chris G. Wallace. Mila pres-
ents the following restated issue for review:

Did the trial court err in awarding to Chris
eighty-six percent of the marital estate?

We reverse and remand.

The facts underlying this appeal are not in
dispute. It is the trial court's legal conclu-
sions relative to those undisputed facts that
Mila challenges as erroneous. Accordingly,
we reproduce in their entirety the trial
court's detailed and lengthy findings of fact.

32. Certain real and personal property
was accumulated during the marriage
which should be equitably divided by the
Court. Husband, who has a Bachelor of
Science degree from Purdue University in
agriculture, has been the primary wage
earner during the marriage. Wife, who is
a high school graduate, worked for a cou-
ple of years after the parties married, but
when she was laid off, the parties jointly
decided that Wife would stay home. Wife
maintained a garden, did the canning, took
care of the house, cooking, laundry, etc.,
and when the parties decided to remodel
the cabin, Wife consulted with the builder
in order to oversee the work. Wife was
also employed during harvest time at Wal-
lace Grain, Inc. for one to three months,
for not less than one (1) year and not more
than three (3) years. Wife has worked in
the home and has fulfilled the roles of Wife
and Mother during the marriage. Hus-
band was the financial source of all joint
assets acquired during the marriage.
Husband also worked consistently around
the home, in particular the outside, and he
has fulfilled the roles of Husband and Fa-
ther during the marriage.

33. A significant portion of the marital
estate consists of business interests, i.e.,
Wallace Farms, Inc., Wallace Grain, Inc.,
and United Feeds, Inc. stock, along with
other publicly-traded stocks and tax-free
bonds which were gifted to or inherited by
Husband. The great majority of these
gifts are multi-generational in nature, and
some even began with Husband's great-
grandfather.

34. The marital residence (originally a
log cabin) was found in southern Indiana
by Husband's grandfather who had the
cabin taken apart, the pieces numbered so
it could be reassembled, and moved to
Sheridan, Indiana, in approximately 1945–
1946, where it was reassembled on the
forty (40) acres originally owned by Hus-
band's great-grandfather. One summer
after that, Husband's grandparents, Lisle
and Margaret Ann Wallace, along with
their son, Phil lived in the cabin. Over
subsequent years, the cabin was used for
political meetings of the Republican party.
Husband moved into the cabin after he
graduated from Purdue University, and
prior to the marriage he added a bathroom
to it. Wife shared the cabin with Husband
for a couple of years prior to their mar-
riage, and over the years a number of
improvements were made to the cabin.
The old screened-in porch was turned into
a kitchen, and a new porch was added. A
bedroom and bath were added next. La-
ter, about 10–15 years ago, two (2) more
bedrooms, another bath, and a two (2) car
garage were added. All of the funds for
these improvements came from either sav-
ings accounts or checking accounts. In
1993 Husband sold six hundred (600)
shares of stock he had received as a gift
from his grandfather in order to fund a
swimming pool. Wife testified this was a

pool she wanted, and Husband did not. The last improvement to the cabin was approximately three (3) years ago when the deck was closed in with funds from the checking account. The parties agreed that the appraised value of the residence now is $169,500.00, but because Husband owns only fifty percent (50%) of Wallace Farms, Inc. and further because Wallace Farms, Inc. owns the residence, only one-half (½) the value should be attributable to the marital estate.

35. Wallace Farms, Inc. was begun by Husband's great-grandfather, Odie Wallace, who actively owned and farmed the land and was in the grain business. The land was passed down to his son, Lisle Wallace, and then to Lisle's son, Phil Wallace. In the 1960s Lisle and Phil bought land to add to Wallace Farms, Inc., and they continued to do so over the years. Wallace Farms, Inc. also contains land which Husband's mother inherited from her family. From the time the Wallace family started buying land, they have never sold any land, except to convert it to other assets which have remained solely in the Wallace family and then pass it down to the next generation. When Wallace Farms, Inc. made money, the funds were used to purchase additional land. No one—Great-Grandfather, Grandfather, Father, nor Husband or his brother—has at any time in the existence of Wallace Farms, Inc., withdrawn any monies or anything of value. By the early 1990s Lisle and Phil had divested themselves of all the shares in Wallace Farms, Inc., by gift to Craig and Chris Wallace, who are now each fifty percent (50%) owners. Husband's brother Craig runs Wallace Farms, Inc., but neither takes any salary from the Corporation.

36. In the 1970s Wallace Farms, Inc. purchased the Wiles family farm, which consisted of approximately forty (40) acres near what is now Marion–Adams High School. They later sold that land to Marion–Adams High School, and the Corporation used the money to purchase a condominium in Florida which is still owned by the Corporation.

37. Wallace Grain, Inc., a grain and feed business, was started in 1935 by Husband's grandfather, Lisle Wallace, and was incorporated in about 1953 or 1954. Lisle's father Odie, prior to his death, told Lisle to buy the grain elevator. Husband owns approximately 36% of the shares of this Corporation; his brother Craig owns sixty percent (60%); and his father Phil owns approximately four percent (4%). Both Craig and Chris received their stock from their grandfather Lisle and from their parents, Phil and Marianna. Craig runs Wallace Grain, Inc., but if a major project was contemplated, Craig testified that not only would he consult with both Husband herein and their father before taking any action, he would not proceed if his father Phil was opposed.

38. Phil and Lisle consulted with John Swisher, the present majority owner of United Feeds, Inc., a livestock feed manufacturer located in Sheridan, Indiana, and encouraged him to start the business and helped him financially. They sold him three (3) acres from Odie's original forty (40) acres and the grain plant. Husband, Father, and Brother shared equally in the proceeds from the sale which consisted of United Feeds, Inc. stock and some cash paid over several years. Husband now works for United Feeds, Inc. and participates in their stock ownership program. In addition to the stock Husband received as a result of the sale of the plant and acreage to United Feeds, he has also purchased more shares and received dividends on both the purchased shares as well as the gifted shares.

39. Husband owns tax-free bonds given to him by his parents over a number of years as a tax planning vehicle. Although the face value of the bonds is $160,000.00, the actual value as of the date of filing was $100,631.51.

40. From the time Husband was a child, he received various shares of stocks. When he was a small boy, his grandfather gave him stock in American State Bank, which was later bought out by Summit

Bank, then by NBD Bank, and lastly by First Chicago NBD. The original 100 shares of American State Bank stock became 766 shares of NBD stock. Husband sold 600 shares of this stock in order to fund the swimming pool at the marital residence. Husband's father sold old, reusable burlap bags and used those monies to purchase shares of stock in General Motors, Exxon, and Indianapolis Water Company for both Husband and his brother Craig as they were growing up. Wife contributed nothing to the acquisition or increase in value of these stocks.

41. During the marriage Husband purchased shares of stock in Sovereign Bank.

42. Both of the parties' daughters have savings accounts, and Jessica has some shares of stock in First Chicago NBD Bank. The Court finds that savings accounts for each of the parties' daughters and the stock which is in Jessica's name shall remain the property of the respective daughter.

43. The parties presented evidence that the gross marital assets and gross marital debts of the marriage are as follows:

| Description | Value | Debt | Net Equity |
|---|---|---|---|
| Marital Residence | $84,750.00 | | $84,750.00 |
| Household goods & furnishings | $15,000.00 | | $15,000.00 |
| Wallace Farms, Inc. | $739,750.00 | | $739,750.00 |
| Wallace Grain, Inc. | $604.000.00 | | $604.000.00 |
| 5,693 shares of United Feeds, Inc. @ $34.30 | $195,269.90 | | $195,269.90 |
| 1,543 shares of United Feeds, Inc. @ $34.30 | $52,924.90 | | $52,924.90 |
| 1996 Chevrolet Truck | $28,000.00 | | $28,000.00 |
| 16' V–Hull fishing boat/motor | $1,000.00 | | $1,000.00 |
| Joint NBD Savings (4/11/96) | $2,215.43 | | $2,215.43 |
| Cash Wife removed from joint funds | $5,000.00 | | $5,000.00 |
| Loan to Wife's sister | $3,000.00 | | $3,000.00 |
| 1996 Federal tax refund 1996 | $23,643.00 | | $23,643.00 |
| State tax refund | $1,328.00 | | $1,328.00 |
| Edward D. Jones acct # 467–02503–1–7 (contains tax free bonds) (4126/96) | $100,631.51 | | $100,631.51 |
| 166 shares of First Chicago NBD @ $39.19 | $6,505.54 | | $6,505.54 |
| 70 shares of General Motors @ $38.91 | $2,723.70 | | $2,723.70 |
| 107 shares of General Motors @ $38.91 | $4,163.37 | | $4,163.37 |
| 160 shares of Exxon @ $80.96 | $12,953.60 | | $12,953.60 |
| 116 shares of Exxon @ 80.96 | $9,391.36 | | $9,391.36 |
| 113 shares of Indianapolis Water Company @ $18.98 | $3,274.74 | | $3,274.74 |
| 228 shares of Indianapolis Water Company @ $18.98 | $4,327.44 | | $4,327.74 |
| 244 shares of Sovereign Bank @ $9.41 | $2,320.44 | | $2,320.44 |
| United Feeds ESOP | $49,303.77 | | $49,303.77 |
| Husband's IRA | $40,000.00 | | $40,000.00 |
| Wife's IRA | $21,000.00 | | $21,000.00 |
| Orthodontia (Jessica's braces) | | ($3,500.00) | |
| TOTAL: | $2,012,976.30 | ($3,500.00) | $2,009,476.30 |

44. Based upon the above, the net marital estate of the parties is $2,009,476.30.

45. Indiana Code 31–1–11.5–11 mandates this Court to presume that an equal division of marital property between the parties is just and reasonable. However, this presumption may be rebutted by relevant evidence that an equal division would not be just and reasonable.

46. Pursuant to Indiana Code 31–15–7–5(1)(2), Husband has rebutted the presumption of an equal division of the marital estate through the testimony of witnesses

showing that numerous items contained in the marital estate were acquired solely because Husband's last name was Wallace. The testimony was uncontroverted that (1) the gifts were clearly to Husband only; (2) the inherited assets have always been held separately (actually by multiple generations), and in Husband's name alone at all times; (3) Wife made no contribution to the accumulation or increase in value of the gifted assets (in fact Wife did not controvert the Husband's evidence that the gifted and inherited assets would be no different today if Husband had never married); (4) the gifted and inherited assets were never co-mingled with any joint marital assets; (5) Wife exercised no control nor any input over the gifted or inherited assets nor how they were to be handled, (in fact, the uncontradicted evidence was that she was *never* consulted about any of these assets and how they were to be handled); and (6) Husband did not at any time treat the gifted or inherited assets as marital property. The Court further finds, in regard to the gifted or inherited assets, from the uncontradicted evidence of Husband, his father and his brother, as follows: (1) That there indeed has been a multi-generational gifting and inheriting plan regarding these assets that started in the late 1880s; (2) That each succeeding generation has adhered strictly to that plan; (3) That the plan is that these assets are to be cared for and passed on only to succeeding generations of Wallaces; (4) That Husband and his brother Craig consider themselves solely as trustees or stewards of this property for the purpose of passing these assets on *en toto* to their children; (5) That none could envision any circumstances that would cause them to sell; and (6) That no one in any of the four (4) generations had involved their wives in management or even advisory positions. Therefore, the Court finds that the following items from the marital estate should be set off fully to Husband because of his acquisition of them through gifts and/or inheritances:

| | |
|---|---|
| Wallace Farms, Inc. | $739,750.00 |
| Wallace Grain, Inc. | $604,000.00 |
| 5,693 shares of United Feeds, Inc. @ $34.30 | $195,269.90 |
| Edward D. Jones acct # 467–02503–1–7 (contains tax free bonds) (4/26196) | $100,631.51 |
| 166 shares of First Chicago NBD @ $39.19 | $6,505.54 |
| 70 shares of General Motors @ $38.91 | $2,723.70 |
| 160 shares of Exxon @ $80.96 | $12,953.60 |
| 113 shares of Indianapolis Water Company @ $18.98 | $3.274.74 |
| TOTAL: | $1,665,108.90 |

47. Husband and Wife have equitably divided all the personal property of the marriage in his or her respective possession, which division the parties ratify, approve and confirm, and each party shall have as his or her separate property his/her respective personal jewelry items and the like, which division the parties ratify, approve and confirm. Wife requests that she receive two (2) totem poles and the barrel from the marital residence in addition to the items of household furnishing she has been awarded. Husband did not object to Wife's request for these particular items of personal property. Therefore, each party shall have their individual personal effects and clothing, and Wife shall receive the two (2) totem poles and barrel.

48. Husband shall have, in addition to the items listed above, as his sole and separate property and debts the following:

| | |
|---|---|
| Marital Residence | $84,750.00 |
| HouseholdGoods/Furnishings | $7,500.00 |
| 1,543 shares of United Feeds, Inc. @ $34.30 | $52,924.90 |
| 1996 Chevrolet Truck | $28,000.00 |
| 16' V–Hull fishing boat/motor | $1,500.00 |
| 107 shares of General Motors @ $38.91 | $4,163.37 |
| 116 shares of Exxon @ 80.96 | $9,391.36 |
| 228 shares of Indianapolis Water Company @ $18.98 | $4,327.44 |
| 244 shares of Sovereign Bank @ $9.41 | $2,320.44 |
| United Feeds ESOP | $49,303.77 |
| Orthodontia (Jessica's braces) | ($3,500.00) |
| Cash Settlement to Wife | ($171.807.73) |
| Total To Husband | $68,873.55 |

49. Husband shall be responsible for and hold Wife harmless from the balance

of the payments to the orthodontist for Jessica's braces.

50. Wife shall have as her sole and separate property the following:

| | |
|---|---|
| Household Goods/Furnishings | $7,500.00 |
| Joint NBD Savings (4/11/96) | $2,215.43 |
| Cash Wife removed from joint funds | $5,000.00 |
| Loan to Wife's sister | $3,000.00 |
| 1996 Federal tax refund | $23,643.00 |
| 1996 State tax refund | $1,328.00 |
| Husband's IRA | $40,000.00 |
| Wife's IRA | $21,000.00 |
| Cash Settlement from Husband | $171,807.73 |
| Total To Wife | $275,494.16 |

51. The Court finds that the just and proper division of the parties' net marital estate shall be that Wife will receive fourteen (14%) percent and Husband will receive eighty-six (86%) percent.

52. Wife shall receive a judgment and lien against Husband's ownership interest in Wallace Farms, Inc. in the amount of $ 171,807.73, with the outstanding balance accruing interest at a rate of eight (8%) percent, which lien shall provide Wife with fourteen (14%) percent of the marital estate. Husband shall pay Wife such judgment in two (2) annual payments of $85,-903.87 plus interest, commencing August 1, 1998, and concluding August 1, 1999.

53. Husband shall reimburse Wife for the rental charges incurred for the rental of Wife's vehicle during the pendency of this action, totaling $1,674.11.

54. Husband, as shown by the evidence, had and will continue to have a greater earning ability than Wife. The marital residence, because of the Corporate involvement, could not be awarded to Wife. Since Wife has custody of the minor children, Wife and the minor children will need to establish a new family residence. Wife, who has no work experience other than homemaker and has no college education, will need time to establish herself in the job.

*Record* at 145–153.

Mila contends that the trial court committed reversible error in awarding eighty-six percent of the marital estate to Chris.

The trial court entered special finding pursuant to Ind. Trial Rule 52(A). When reviewing a challenge to the court's division of marital property in a dissolution action, we determine whether the evidence supports the findings, and then whether the findings support the judgment. *Breeden v. Breeden,* 678 N.E.2d 423 (Ind.Ct.App.1997). We review a challenge to the trial court's division of marital property for abuse of discretion. In so doing, we consider only the evidence favorable to the judgment. *Capehart v. Capehart,* 705 N.E.2d 533 (Ind.Ct.App.1999). The trial court will be reversed only if its judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn from those facts. *Id.*

Ind.Code Ann. § 31–15–7–4 (West 1998) directs trial courts to divide the property in a dissolution action in a just and reasonable manner. IC § 31–15–7–5 provides that courts "shall presume that an equal division of the marital property between the parties is just and reasonable." Section 5 further provides that the presumption of an equal division may be rebutted by evidence of several factors, including: (1) the income-producing or nonincome-producing contributions of the respective spouses; (2) the extent to which property was acquired by each spouse either before the marriage or through inheritance of gift; (3) the economic circumstances of each spouse and the time of disposition of the property; (4) the parties' conduct during the marriage with regard to the disposition or dissipation of the property; and (5) the parties' respective earning capacities.

In the instant case, the trial court determined that Chris had rebutted the presumption of equal division by demonstrating that: (1) the gifts from Chris's parents were to Chris only; (2) the assets inherited by Chris have at all times been held separately by Chris and in his name only; (3) Mila made no contribution to the accumulation or increase in the value of the gifted and inherited assets; (4) the gifted and inherited assets were never commingled with joint marital assets; (5) Mila did not exercise control over, nor have any input with regard to, the gifted or inherited assets; and (6) Chris did not at any time treat the gifted and inherited assets

as marital property. As a result, the trial court determined that Mila should receive fourteen percent of the marital property (approximately $275,494.16) and Chris should receive the remaining eighty-six percent (approximately $1,733,982.40). The obvious imbalance in the proportion that each was awarded is attributable to the trial court's determination that certain items from the marital estate should be set off fully to Chris because they had been acquired by him through gifts or inheritance. The items set off fully to Chris included his stock in Wallace Farms, Wallace Grains, United Feeds, First Chicago NBD, and Exxon, 70 shares of General Motors stock, 113 shares of Indianapolis Water Company stock, and an account containing tax-free bonds that had been a gift to Chris. The total value of the assets set off fully to Chris was $1,665,108.90.

Neither party challenges the trial court's valuation of the assets. The parties agree that the court awarded Mila fourteen percent of the assets and Chris eighty-six percent. Mila contends, however, the trial court erred in setting aside what amounted to eighty-three percent of the assets to Chris before dividing the remainder between the two parties.

In *Wilson v. Wilson*, 409 N.E.2d 1169 (Ind. Ct.App.1980), a husband and wife divorced after twenty-three years of marriage. The marital estate included property that the husband had acquired by inheritance. The net value of the marital estate was $207,-794.00. The trial court awarded the husband more than eighty percent of the marital assets, including all of the inherited assets. Upon appeal, this court reversed the division of assets, holding that the trial court erred in "systematically excis[ing] any portion of the marital assets which was attributable to a gift or an inheritance from [the husband's] parents." *Id.* at 1174. The court concluded that such a "simplistic or mechanical division of the marital assets," *id.,* did not satisfy the requirements of IC § 31–1–11.5–11, the predecessor to IC § 31–15–7–4 and IC § 31–15–7–5. Those statutory provisions require that, when ordering an unequal division, the trial court must consider *all* of the factors set out in IC § 31–15–7–5. We observe that a consideration of whether the property was acquired by one of the parties through inheritance or gift is only one of the five factors a court should review. By focusing only upon one factor when others are present, a trial court runs the risk of dividing a marital estate in an unreasonable manner.

In *Swinney v. Swinney,* 419 N.E.2d 996 (Ind.Ct.App.1981), *trans. denied,* this court held that an award of ninety-seven percent of the marital assets to one of the parties in a dissolution action was an abuse of discretion. In *Swinney,* the trial court found that the value of the total marital estate was $45,270, of which $40,000 was attributable to the marital residence. The couple's equity in the home was largely the result of gifts given by the wife's father. The trial court awarded to the wife the marital residence, a car, a savings account, a checking account, and household goods, with a total valuation of $43,970. The court awarded the husband only a car valued at $1,300 and items of personal property that were of little monetary value. The division of property was reversed on appeal. Implicit in the *Swinney* court's decision was its view that the error was based primarily upon the fact that the trial court treated the gifts from the wife's father as if they were not marital assets. In this regard, the court stated:

> Indeed, it appears the trial court did not consider the family residence, which was primarily the result of gifts from wife's father, to be a part of the "marital pot." Indiana case law makes it clear that inherited or gift property is not to be excluded from the marital assets. The spirit of IC 31–1–11.5–11 requires [that] gift property be treated as a marital asset. While the trial court here did not expressly make findings of fact which excluded the residence from the marital pot, the results raise a strong inference that such was the case.

*Id.* at 999 (citations omitted).

We conclude that the error made by the trial courts in *Wilson* and *Swinney* was repeated in the instant case. The trial court left no doubt with respect to the reason for awarding the gift and inherited assets entirely to Chris: "Therefore, the Court finds that

the following items from the marital estate should be set off fully to Husband because of his acquisition of them through gifts and/or inheritances." *Record* at 151. The court's stated rationale, coupled with the striking discrepancy between the respective portions of the marital estate awarded to each of the parties, leads inescapably to the conclusion that the trial court excluded from the marital pot the property acquired during the marriage by gift or inheritance from Chris's family.

■ The trial court's intent in fashioning the award as it did is clear and understandable. Chris's interests in the family businesses, along with the real property and improvements thereon, were attained in large part because his status as kinsman to those who built up those businesses over the years. Beginning more than a century ago, Chris's ancestors established successful farming-related business enterprises that have culminated not only in the ongoing farming operations in which he, his brother, and father are engaged, but also in Wallace Farms, Wallace Grains, and to a lesser extent, United Feeds. Moreover, as a direct result of the success of the various enterprises in which his family has engaged, Chris has over the years received gifts of stock. No doubt sensitive to the fact that the aforementioned assets are historically and deeply rooted in Chris's family, the trial court sought to preserve the familial integrity of those assets by setting them aside entirely to Chris.

Although we do not disagree with either the motivation underlying the trial court's award or the fact that family-related assets themselves were awarded to Chris, we cannot sanction the overall division of assets. Simply put, we discern no justification in the record for the wide disparity between the value of the marital pot awarded to Chris versus the value of the marital pot awarded to Mila. While the nature and source of the marital assets derived from Chris's family may provide justification for some deviation from the statutory, presumptive equal division, they do not support a discrepancy of the magnitude that resulted here. In this regard, we note that IC § 31–15–7–4(b) provides several options that the trial court may

utilize upon remand in such a way as to provide a just and reasonable division of the marital assets between the parties, while at the same time awarding to Chris those assets which are closely connected with his family.

In summary, the record demonstrates that the trial court systematically excluded from the marital estate those assets that were attributable to gifts or inheritance from Chris's family. Thus, the presumption that the trial court complied with the applicable law in dividing the assets, *see Castaneda v. Castaneda*, 615 N.E.2d 467 (Ind.Ct.App. 1993), has been rebutted and we conclude that the trial court abused its discretion and the division of the marital estate must be reversed. This cause is remanded to the trial court with instruction to redetermine the property division in compliance with the principles set out in this opinion. We will not otherwise attempt to dictate to the trial court how it should exercise its discretion in dividing the marital property. *See Wilson v. Wilson*, 409 N.E.2d 1169.

Judgment reversed and remanded.

STATON, J., concurs.

BAILEY, J., dissents with separate opinion.

BAILEY, Judge, dissenting

### A. Standard of Review of Property Distributions upon Dissolution

We are to apply a strict standard of review with respect to a dissolution court's distribution of property. *Coffey v. Coffey*, 649 N.E.2d 1074, 1076 (Ind.Ct.App.1995). The party challenging the property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *Id.* The presumption that the divorce court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. *In re Marriage of Stetler*, 657 N.E.2d 395, 398 (Ind.Ct.App. 1995).

We will reverse a property distribution only if there is no rational basis for the

award, that is, if the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *McGinley–Ellis v. Ellis,* 622 N.E.2d 213, 217 (Ind.Ct.App.1993), *pertinent portion summarily affirmed,* 638 N.E.2d 1249, 1253. We will also reverse where the trial court has misinterpreted the law or has disregarded evidence of statutory factors. *Coffey,* 649 N.E.2d at 1076. However, that the same circumstances may have justified a different property distribution will not permit us to substitute our judgment for that of the divorce court. *Fiste v. Fiste,* 627 N.E.2d 1368, 1373 (Ind.Ct.App.1994); *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1325 (Ind.Ct.App.1991).

### B. Systematic Exclusion of Property from Marital Pot

The majority concludes that the trial court improperly excluded from the marital pot the property acquired by gift and inheritance from Chris' family. (Op. at 781). Certainly, Indiana's "one pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. *Hann v. Hann,* 655 N.E.2d 566, 569 (Ind.Ct.App. 1995). The systematic exclusion of any marital asset from the marital pot is erroneous. *See Wilson v. Wilson,* 409 N.E.2d 1169, 1173 (Ind.Ct.App.1980). Nevertheless, although the trial court must include all assets in the marital pot, it may appropriately ultimately decide to award an asset solely to one spouse as a part of its just and reasonable property distribution. *See Coffey,* 649 N.E.2d at 1077.

As noted by the majority, the trial court in the present case expressly included the property acquired by gift and inheritance in its valuation of the net marital estate at $2,009,476.30. (Op. at 777). The trial court then entered detailed findings supporting its conclusion that the statutory presumption in favor of an equal division had been rebutted—a conclusion that the majority agrees is supported by the evidence. (Op. at 781). Quite simply, the trial court did not exclude property from the marital pot.

### C. Disregarded Evidence of Relevant Statutory Factors

The majority also concludes that the trial court improperly considered only one of five statutory factors in arriving at its 86–14 division. (Op. at 780). However, the majority omitted the following emphasized language from the last trial court finding it set out:

> 54. Husband, as shown by the evidence, had and will continue to have a greater earning ability than Wife. The marital residence, because of the Corporate involvement, could not be awarded to Wife. Since Wife has custody of the minor children, Wife and the minor children will need to establish a new family residence. Wife, who has no work experience other than homemaker and has no college education, will need time to establish herself in the job market and maintain her responsibility for being the mother and custodian of the children. *Therefore, the Court took these items into consideration in determining the division of the marital estate.*

(R. 153) (emphasis supplied); (*compare* Op. at 779). Thus, the trial court expressly took the other relevant statutory factors into consideration in its determination of a just and reasonable property distribution. *See Finley v. Finley,* 422 N.E.2d 289, 300 (Ind.Ct.App. 1981) (holding that the trial court properly considered both spouses' relative contributions to the marriage in the determining a just and reasonable distribution of marital property).

### D. Conclusion

I readily agree with the majority that the facts and circumstances as viewed from our perspective would certainly have supported a distribution more favorable to Mila. However, as noted above, such a determination will not permit this court to substitute its judgment for that of the divorce court. *Fiste,* 627 N.E.2d at 1373; *DeHaan,* 572 N.E.2d at 1325. As the evidence supports the trial court's detailed and thoughtful findings which in turn support its determination of a just and reasonable division of marital property, I cannot conclude that the trial court's judgment is clearly erroneous. *See Stetler,* 657 N.E.2d at 398–99 (holding that a proper-

ty distribution based on special findings will not be reversed unless the record is devoid of facts or inferences to support the findings or that the judgment is unsupported by the findings). Therefore, I would affirm the divorce court's property distribution.