**Raymond RIDDLE, Appellant (Respondent Below),**

v.

**Shirley M. RIDDLE, Appellee (Petitioner Below).**

No. 36A01–9005–CV–200.

Court of Appeals of Indiana, First District.

Feb. 5, 1991.

---

Dean E. Richards, Indianapolis, for appellant.

Bruce M. Pennamped, Indianapolis, for appellee.

ROBERTSON, Judge.

Raymond Riddle appeals certain aspects of the decree of dissolution which ended his thirty-six year marriage to Shirley Riddle. We agree with Raymond that . error occurred in the allocation of the structured settlement fund; accordingly, we reverse in part and remand.

Raymond and Shirley Riddle married on December 28, 1951 when Shirley was still in high school. Neither spouse brought property of value into the marriage but both spouses contributed their incomes from employment to the marriage. Shirley worked two jobs all of her adult life, except in the last stages of her two pregnancies. During the years when the children were at home, Raymond worked on the night shift and Shirley cared for the children. Presently, Shirley is employed as an accountant for the Indiana University Bookstore.

In February, 1981, Raymond suffered a stroke following a traffic accident which left him partially paralyzed on the right side of his body. He also experienced post traumatic seizures and a loss of vision. Raymond's seizures are controlled by medication now and he is able to walk with the aid of a cane. His vision is still impaired and he needs assistance with his daily living but he is able to prepare his own meals and medication.

The primary assets of the marriage are the residence and the annuity which resulted from the settlement of the Riddles' claims arising from the automobile accident which injured Raymond. The trial court awarded Shirley 40% of the monthly annuity payment of $3000 and the survivorship benefit associated with it. She also received the marital residence which Raymond did not want because it was not well suited to the needs of a physically impaired person. The parties agreed to the distribution of much of the personalty and retain the bank and retirement accounts which were in their possession. Raymond perceives the decree as awarding him $251,910.40 and Shirley $278,146.60, a 47/53% split.

Although Raymond argues that the trial court abused its discretion by failing to award him a greater portion of the marital assets, the crux of Raymond's appeal concerns the manner in which the trial court divided the annuity or structured settlement fund and its effect upon the property distribution as a whole. Although he now concedes that the fund is subject to distribution as an asset of the marriage, Raymond disputes the award of the survivorship benefit to Shirley. He contends, among other things, that the award constitutes an impermissible distribution of a future interest in a death benefit; that the trial court failed in its findings to acknowledge that the survivorship benefit had value and to assign a value to it; and that the determination of the value of the fund as a whole and the survivorship portion of it, was error.

Ind.Code 31–1–11.5–11(b) directs the court to divide "the property of the parties, whether owned by either spouse prior to the marriage, acquired by either

spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts ..." "Property" means "all the assets of either party or both parties ..." I.C. 31–1–11.5–2(d). However, for an asset to come within the ambit of "property," one or both of the spouses must have a vested present interest in the asset. *Qazi v. Qazi* (1986), Ind.App., 492 N.E.2d 692, *trans. denied; Hiscox v. Hiscox* (1979), 179 Ind.App. 378, 385 N.E.2d 1166, 1167; *Wilcox v. Wilcox* (1977), 173 Ind.App. 661, 365 N.E.2d 792, 794.

In *Sedwick v. Sedwick* (1983), Ind.App., 446 N.E.2d 8, this district held that an annuity funded by earnings for services which had been performed during the marriage constituted a marital asset subject to division. We reasoned that the total amount of the annuity was fixed, readily ascertainable and payable in eight annual installments whether or not the spouse that had acquired the annuity survived. The spouse's right to the fund was absolute, even though enjoyment had been postponed. *Cf. Neffle v. Neffle* (1985), Ind. App., 483 N.E.2d 767, *trans. denied.* Since the annuity had not been included in the "marital pot," we directed the trial court to divide the assets a second time.

In the present case, there can be no question that Raymond's right to receipt of the annuity, which began November 20, 1982, was absolute prior to the filing of the petition, and that the total value of the annuity was fixed, readily ascertainable and payable regardless of whether he survived. Shirley offered the only evidence of the value of the annuity. The record shows that as of July 21, 1988, the day after the twentieth payment of 360 had been made, the present value of the annuity without regard to survivorship was $402,175. The trial court so found.

We had no cause to consider in *Sedwick* what a just and reasonable distribution of the monthly payments and survivorship benefit of an annuity would be, observing in dicta that the survivorship aspect of the annuity was relevant to the determination of the present value of the annuity to each of the parties but was not pertinent to the present value of the annuity in and of itself. Neither are we guided by the fourth district's decision in *Gnerlich v. Gnerlich* (1989), Ind.App., 538 N.E.2d 285, *trans. denied,* in which it was held that disability insurance benefits intended at least in part to compensate for diminution of earning capacity were sufficiently similar in nature to an ordinary retirement pension to be appropriately characterized as marital property subject to division, for in that case each of the interests awarded the spouses expired at the same time. Hence, there, unlike here, no real question of the equity of the division arose.

■ In Indiana divorce proceedings, a trial court must divide the marital property in a just and reasonable manner. It is presumed that an equal division of property is just and reasonable unless relevant evidence is offered to rebut the presumption. I.C. 31–1–11.5–11(c); *Shumaker v. Shumaker* (1990), Ind.App., 559 N.E.2d 315, 317.

■ The legislature's intent in enacting I.C. 31–1–11.5–11 was to ensure that all property rights be settled with certainty at the time of dissolution, regardless of whether the award is made by payment of a lump sum, installments, or a transfer of property. *Caddo v. Caddo* (1984), Ind. App., 468 N.E.2d 593, 594; *Whaley v. Whaley* (1982), Ind.App., 436 N.E.2d 816, 820. Consequently, the trial court must dispose of all the marital property in one final settlement. No part of the distribution may be conditioned upon a subsequent change in circumstances. *Waggoner v. Waggoner* (1988), Ind.App., 531 N.E.2d 1188, 1189; *Murphy v. Murphy* (1987), Ind. App., 510 N.E.2d 235, 237.

Thus, in *Whaley*, we reversed an award of cash the full receipt of which was conditioned upon the wife's survival and which was subject to reduction upon the husband's retirement. There we indicated that the parties' respective rights in the marital estate should not depend upon their conduct subsequent to the dissolution. If the obligation to pay money was ordered by the court as a means of equalizing the

division of property, it was an integral part of the property settlement and unlike alimony or maintenance, should survive death. Likewise, in *Wilhelm v. Wilhelm* (1979), Ind.App., 397 N.E.2d 1079, we held that a deferred monetary award made contingent upon the decision to sell the house or remarry did not provide the necessary certainty required of a property distribution. To diminish the property award because of a subsequent remarriage would manifestly prejudice the rights of the recipient spouse.

In the case at bar, the trial court divided the annuity by awarding Shirley 40% of the monthly payments to be received by Raymond and the survivorship benefit. The trial court did not place a present value on either asset. But even if it had, the award would suffer from the same deficiency. Raymond's receipt of any of the monies awarded him is contingent upon his continued survival. Should he die tomorrow, neither he nor his estate will have received his full share of the marital assets while Shirley will have received far more than the trial court could have reasonably intended.

This is not to say that the annuity in question does not constitute a present vested interest which is subject to division. Rather, as Raymond argues, the manner in which the trial court chose to award the asset fails to comport with statutory requirements. Had the trial court awarded Raymond the entire annuity including the survivorship benefit and Shirley a cash award payable in installments with interest, the award would have achieved the division with the certainty required by Indiana law.

Given the uncertain nature of the award as it presently exists, we are unable to evaluate the trial court's division of the marital assets as a whole. Accordingly, we must remand to the trial court for a redistribution of the marital estate. Raymond's brief suggests that he may perceive this remand as an opportunity to offer evidence he failed to present during the trial of this matter. It is not. As we have indicated, the evidence of record is sufficient to permit the trial court to redistribute the assets without abusing its discretion.

■ Raymond argues that the trial court failed to state specifically its reasons for deviating from the statutory presumption that an equal division would be just and reasonable. This argument was raised and decided in *Shumaker*, 559 N.E.2d 315. The trial court's findings reflect that it considered the factors set forth in I.C. 31–1–11.5–11(c). Articulation on the record of the relevant evidence is sufficient to support an unequal division of property. *Id.* at 318.

■ Raymond also seeks a reconsideration of the evidence relating to his need for maintenance. He argues a division of the annuity leaves him without sufficient funds to adequately support himself. He also complains that funds were not allocated by the trial court for major medical expenses he might incur in the future.

■ An award of maintenance is within the sound discretion of the trial court. Even if a spouse's incapacity materially affects his self-supportive ability, an award of maintenance is not mandatory. I.C. 31–1–11.5–11(e); *Rump v. Rump* (1988), Ind.App., 526 N.E.2d 1045, 1046, *trans. denied.*

The evidence of record shows that prior to the division of marital assets and without regard to the monthly annuity check, Raymond's income from social security disability and his retirement account amounted to virtually the same as Shirley's net income from employment. After the final hearing, Shirley no longer would pay for Raymond's health insurance but Raymond could acquire insurance, because of his former employment, at a reasonable rate.

At the time of the final hearing, Raymond expended $450 weekly for health care and housekeeping provided by his live-in daughter-in-law and her mother, but spent as much as eight hours a day alone. His monthly expenses, including the mortgage payment of $192.64, amounted to $3,555.86 of which $1935 was paid to his in-laws for home and medical care. In the past, at a time when Raymond needed constant care, Shirley hired a nurse for $140

per week. Though Shirley performed much of Raymond's care herself and did the housecleaning, she also worked full time.

Raymond testified that he intended to move into a trailer with his son and daughter-in-law until they could find a home suitable for their mutual needs. For better than a year during the period of separation, Raymond failed to collect reimbursement for medical and pharmaceutical costs. He built up a savings account of better than $5000 and refused to contribute toward the debt of the marriage, even though much of the debt was acquired to make improvements on the home which would render it habitable for him.

Taken together, these facts suggest that Raymond could acquire care at a rate considerably lower than he was paying at the time of dissolution and that his financial resources permitted the kind of expenditures he was making. On the other hand, Shirley demonstrated that with the debt of the marriage, her income from the bookstore, and various odd jobs she took on, she did not have the means to establish a permanent residence for herself. Under these circumstances, and based upon the history of cost associated with Raymond's care, the trial court could determine that Raymond had the ability to be self sufficient on his disability and retirement income without contribution from Shirley but that Shirley could not meet both her needs and those of Raymond. We cannot say that the trial court's decision to deny Raymond mainténance is clearly against the logic and effect of the facts and circumstances before the court. However, this result should be reconsidered by the trial court once a final distribution of the marital assets is made.

■ With respect to Raymond's contention that the trial court failed to take into account Raymond's long term medical needs, Raymond did not specifically ask the court to consider those needs, offer evidence of his anticipated expenses or demonstrate that any projected costs would not be mitigated by insurance. Since Raymond was the party requesting maintenance, the burden was his to demonstrate need. The trial court has no duty to sua sponte fill an evidentiary void. *See Showley v. Showley* (1983), Ind.App., 454 N.E.2d 1230.

■ Raymond raises three other issues which we will address only briefly. First, he argues that the trial court abused its discretion in awarding Shirley attorney fees. A court may consider a number of factors in deciding whether to award attorney's fees and how much to award. Those factors include the amount of assets awarded to the parties, the relative earning ability of the parties, the superiority and availability of funds of one party in relation to the other, and which party initiated the action. *Crowe v. Crowe* (1990), Ind.App., 555 N.E.2d 180, 183.

We are not prepared to rule at this time upon the propriety of the amount of the award as it is necessarily based in part upon the distribution of the assets; however, the trial court's decision to award attorney fees to Shirley is not clearly against the logic and effect of the facts and circumstances before the court. Although Raymond testified concerning his wishes and the circumstances of the marriage, Shirley offered all of the documentary evidence of the value of the marital assets. She incurred attorney fees in the amount of $4,362.85 in addition to deposition and appraisal fees totaling approximately $1250. Her attorney attended and prepared for both of Raymond's depositions which were necessitated at least in part by Raymond's inability to attend the trial himself.

■ Second, Raymond contends that he was denied a fair result because of ex parte communications between the trial court and Shirley's counsel concerning Shirley's proposed findings of fact. We observe that any harm occasioned Raymond by reason of the communications has been mitigated by the relief he has obtained in this appeal.

The record discloses that after Raymond raised the issue of impropriety in engaging in ex parte communications in his motion to correct error, the special judge presiding over the case disqualified himself. Ray-

mond argues that the special judge appointed subsequent to the filing of his motion to correct error committed reversible error in ruling upon the motion without first reviewing the evidence presented at trial. Raymond has obtained plenary review of his allegations of error by this court. Accordingly, if any harm was occasioned Raymond, our remand should cure it.

Judgment reversed in part and remanded.

BAKER, J., concurs.

SHIELDS, P.J., concurs with separate opinion.

BAKER, J., concurs in concurring opinion.

SHIELDS, Presiding Judge, concurring.

I concur in the majority's opinion. I write this separate opinion only to suggest alternatives for the trial court's consideration.

The trial court's thoughtful judgment distributing the marital property must be reversed because the trial court erred in allocating the structured settlement fund. The undisputed value of the guaranteed annuity is $402,175.[1] Raymond's receipt of the remaining guaranteed monthly payments is contingent upon his survival; therefore, his receipt of his portion of the total value would be defeated if he did not survive until his assumed life expectancy. This contingency violates the prohibition against any part of the distribution of the marital estate being conditioned upon a subsequent change in circumstances, including death.

However, I want to make it clear that, in my opinion, the trial court has several alternatives upon remand. For example, it can distribute a proportional share to each party, as it has, if it includes all the remaining monthly payments, i.e., Raymond and his designated beneficiary receive sixty percent (60%) of each monthly benefit; Shirley and her designated beneficiary receive forty percent (40%) of each monthly benefit. Alternatively, the trial court could award either party a sum certain representing some portion of the present value of the remaining guaranteed monthly payments payable in such manner as the court determines. Undoubtedly there are other acceptable alternatives. The only thing the trial court cannot do is to provide that the interest awarded to either party is divested by that party's death.[2]

I emphasize the purpose of the remand is to allow the trial court only to reconsider the distribution of the marital property. I also want to emphasize this court's determination that the trial court's judgment contains sufficient findings to support an unequal division of property in favor of Shirley.

1. There is evidence apportioning the total present value of the guaranteed annuity, $402,-175, between Raymond's expected receipts, based upon his life expectancy, and Shirley's survivorship benefit. Assuming a mortality multiple of 100% means standard mortality, the value of the payments for Raymond's life expectancy is $358,724 and the value of the survivorship portion is $43,451.

2. Hence, there is no issue concerning the trial court's failure to place a present value on the right to receive the monthly payments during Raymond's life expectancy and on the right to receive those benefits as a named beneficiary.