Linda NEWBY, Appellant–Petitioner,

v.

John NEWBY, Appellee–Respondent.

No. 48A05–9908–CV–365.

Court of Appeals of Indiana.

Aug. 30, 2000.

Michael M. Painter, Muncie, Indiana, Attorney for Appellant.

Christopher A. Cage, Michael C. Lacey, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Linda Newby ("Wife") appeals the trial court's order upon the dissolution of her marriage to John Newby ("Husband").

We affirm in part and reverse and remand in part.

### ISSUES

1. Whether certain findings of fact are not supported by the evidence.

2. Whether the trial court erred in not making specific findings of fact as to (a) an arrearage in Husband's temporary support payments; (b) certain medical bills incurred by Wife; and (c) personal property requested by Wife.

3. Whether the trial court erred in not ordering an equal division of the marital estate.

4. Whether the trial court erred when it did not order Husband to make specific direct maintenance payments to Wife but did order Husband to make payments of up to $400 monthly for Wife's healthcare expenses not covered by Medicaid.

### FACTS

Wife and Husband were married on March 12, 1980. Each had been married before and had children from an earlier marriage. At the time they wed, Husband had $622,500.00 in assets, and Wife had $5,000. In addition to investment and retirement accounts, Husband owned the residence which the parties thereafter occupied. Husband also wholly owned Implement Services, Inc., a business engaged in the sales and service of outdoor power equipment. He had started working there at age fifteen and bought it in 1964. Wife was employed as office manager and bookkeeper at Implement Services from 1982 until July of 1994, when Husband sold the business to his son. On August 28, 1996, Wife filed a petition for dissolution. At that point, neither were working. Wife had suffered three strokes and undergone angioplasty and a quadruple by-pass. Husband was on disability, having suffered two heart attacks and two strokes and undergone two by-passes.

After a provisional hearing in September of 1996, the trial court ordered Husband to pay temporary support to Wife in the amount of $250.00 weekly. It also ordered that she vacate the marital estate, removing only "her personal possessions." (R. 40).

When Husband reentered the residence, he found the freezer door had been left open and hundreds of dollars worth of meat, fish and poultry had spoiled. Houseplants had been thrown in the yard. The wiring had been pulled from television sets. Husband's medication and eyeglasses were missing, as was a great deal of his clothing and footwear. Further, the premises had been sprayed with paint and physically damaged.

On November 14, 1996, Wife suffered a debilitating stroke which left her unable to care for her own basic needs. Her daughter Lori was appointed her guardian. Wife's IRA (nearly $48,000) was liquidated to build an addition to Lori's house and help pay for her care there. Also, Wife received Social Security disability benefits of $463 monthly and the weekly $250 tem-

porary maintenance payments from Husband.

The trial court held the final hearing over the course of three days: July 17, 1998, November 11, 1998, and January 22, 1999. It heard evidence that during the period when Wife handled financial accounting for the business, the business suffered cash shortages that it had not previously suffered, and that she had misappropriated substantial funds belonging to Implement Services. There was evidence which showed that Wife's unapproved use of the business' credit card and unauthorized expenditures totaled $16,091.26, and she cashed $8,661.03 in Toro warranty checks payable to the business. In addition, the court heard evidence of bank accounts controlled by Wife and unknown to Husband. Finally, the trial court learned that Wife had suffered another stroke in August of 1998, and she was in a nursing home and expected to require such care indefinitely.

The trial court concluded that "an equal division of property would not be just and reasonable in that significant property was acquired by"[1] Husband before the marriage of the parties. The trial court determined that the property brought into the marriage had appreciated in value in the amount of $263,563.22, and held that Wife and Husband should equally share in that appreciation, with each receiving $131,679.11. However, the court then reduced Wife's one-half share by the amount it determined to constitute dissipation of marital assets. After deducting the value of the property retained by Wife and the sum the trial court found that she dissipated, Wife's net award was $29,061.14. In addition to the division of property, the trial court ordered Husband to pay up to $400.00 per month for Wife's medical expenses "not covered by Medicaid."

## DECISION

### 1. Trial Court Findings

■ At Husband's request, the trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. Therefore, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of witnesses. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 972 (Ind.1998). We consider whether the evidence supports the factual findings and then whether the findings support the judgment. *Id.* The findings are clearly erroneous only when a review of the record leaves us convinced that a mistake has been made. *Id.*

■ Wife asserts that the evidence fails to support the finding contained in the trial court's valuation of "all marital assets of the parties on the date of separation," August 26, 1996. Specifically, she argues that the amount of $261,428.09 for the business being bought by Husband's son on contract was erroneous. As noted by Wife, the sale agreement provided that the price for the business was $371,428.09, and payments of $2,500.00 were to be made monthly beginning on August 20, 1994. Accordingly, Wife contends, 25 payments would have been made, for a total of $62,500, and the balance would be $308,928.09. As Wife has accurately summarized the evidence, and Husband does not dispute or respond on this contention, we must agree that the finding of a $261,428.09 balance in this regard is clearly erroneous, and $47,500 must be added to the trial court's total valuation of the parties' marital assets at the time of separation.

■ Wife also asserts that the trial court's finding that she is responsible for $5,619.47 in damages sustained by Husband when she vacated the house is clearly erroneous in that it includes $1,300 for a

---

1. The record does not contain the trial court's order. Wife provides what she describes as a verbatim statement thereof as an appendix to her brief, and Husband does not dispute its accuracy. Therefore, all quotations from the trial court's order in this paragraph and elsewhere are taken from the appendix to Wife's brief.

depth-finder subsequently found by Husband hidden in the back of a closet. Husband agrees that this finding errs by including that amount. Accordingly, the $5,619.47 damages finding must be reduced by the sum of $1,300 to $4,319.47.

▮ Next, Wife claims the following finding to be clearly erroneous:

> ... that prior to [Husband] taking possession of such real estate [Wife] left the freezer open allowing food to spoil; that [Wife] removed [Husband]'s clothing and pictures and portable television from the residence; that the marital residence suffered spray paint damage; the cabinets were stripped; the building was stripped and [Husband]'s financial records were removed and/or destroyed, that this damage is set forth in [Husband]'s Exhibit "S" [consisting of] photographs of the damaged marital residence.

Wife claims that this finding is erroneous because her son and son-in-law testified that they saw no damage and Husband's testimony was not corroborated. She presents no authority for the proposition that the court could not so find based on Husband's testimony alone, and her argument fails to acknowledge that it is for the trial court to assess witness credibility. *See Shell Oil.*

▮ Wife also claims that the trial court's finding that she "dissipated marital assets by converting cash, making unauthorized purchases from Implement Service, Inc. and in receiving proceeds from certain bank accounts ... in the amount of Forty Thousand Dollars ($40,000.00)" is not supported by the evidence. She acknowledges testimony that she had bought a great number of lottery tickets. However, she does not acknowledge Husband's testimony about finding hidden deposit slips for large cash deposits in her name alone, and that she had accounts unknown and unavailable to him – the previous finding. Moreover, the instant finding follows other findings that Wife does not contest: that the business experienced cash shortages while she was involved in managing the business' accounts; that she made unauthorized purchases on the business' credit card; that she personally negotiated and converted funds from checks payable to the business; and that she converted funds from a joint account to her personal use. The $40,000 is the total of the amount shown in other specific, unchallenged findings.

▮ Dissipation of marital assets involves "the frivolous, unjustified spending of marital assets" and "includes the concealment and misuse of marital property." *In re Coyle,* 671 N.E.2d 938, 943 (Ind.Ct. App.1996). As she correctly notes, the test for dissipation of marital assets is "whether the asset was actually wasted or misused." *Id.* at 944. The evidence that supports the findings not challenged by Wife also supports the finding of her "concealment and misuse of marital property," showing of dissipation. *Id.* at 943. Accordingly, the evidence supports the finding that she "dissipated marital assets."[2]

---

2. Wife also argues that the following findings are not supported:

> ... that [Wife] has applied for Medicaid benefits but has been denied due to her receiving maintenance payments from [Husband].
> ... that [Wife] has been rejected for Medicaid because she is still married and due to the fact that [Husband] has been paying temporary maintenance to [Wife] in the sum of Two Hundred Fifty Dollars ($250.00) per week thus disqualifying her from Medicaid coverage. The Court finds that in the event that [Wife] is unmarried

and does not receive direct maintenance payments from [Husband] and if [Wife] has less than Fifteen Hundred Dollars ($1,500.00) in assets she will qualify for Medicaid.
> ... that to require [Husband] to pay [Wife] permanent maintenance would only reduce and or disqualify [Wife] from receiving full Medicaid benefits.

Wife asserts that the record fails to show that these findings are "an accurate statement of the law or why [she] was denied for Medicaid." Wife's Brief at 23.

## 2. *Lack of Trial Court Findings*

■ Wife argues that the trial court erred in *not* making findings on three matters. First, she asserts that the trial court erred in failing to make a special finding of fact as to Husband's arrearage in the $250.00 weekly temporary maintenance that he had been ordered to pay. On the second day of the final hearing, Husband conceded that he was behind $500.00. Wife's counsel asked that he bring himself current, and he agreed to do so. On the third (and last) day of the final hearing, no evidence was presented that Husband had failed to do so. Consequently, we find no error in the trial court's failing to find an arrearage. However, inasmuch as we are remanding this case for the correction of certain errors, we are going to order that the trial court review the matter of the arrearage and make a specific finding thereon.

Next, Wife claims that the trial court erred in failing to make a special finding of fact as to her "medical bills incurred prior to separation." Wife's Brief at 11. She directs us to evidence in the record indicating that such bills total $8,098.61. The record reveals no dispute as to these bills having been incurred by Wife before the parties' separation, nor to their being due and owing. Husband does not dispute them on appeal. Thus, a finding of no outstanding medical expense liability in the parties' marital estate would be clearly erroneous, *see Shell Oil,* and we remand for a finding in this regard.

■ Finally, Wife asserts as error the trial court's failure to make a special finding as to the personal property she sought. Wife's daughter/guardian submitted to the trial court a list of "items from the house" that she said Wife had written out before

her stroke as "personal property," and things of "family significance." (R. 1062, 1063). We note that the initial trial court order directing Wife to vacate the marital residence in three days allowed her to take her "personal belongings." (R. 40). Moreover, the trial court's property distribution gave Wife credit for the "value of property she brought into the marriage" and awarded Wife her "personal effects presently in her possession." Nevertheless, there was no testimony that she had taken all her personal belongings; nor did Husband dispute that personal property of Wife remained in the residence. Consequently, we also must remand for further finding in this regard.

## 3. *Division of the Marital Estate*

■ The trial court's discretion in the disposition of marital property is subject to the statutory presumption for equal distribution. *Fiste v. Fiste,* 627 N.E.2d 1368, 1372 (Ind.Ct.App.1994). However, the presumption that an equal division of marital property would be just and reasonable

may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the

---

However, Wife's daughter, her guardian, testified that Wife had been turned down for Medicaid. She further explained that an applicant could not be married and must "have under $1,500 and no assets to your name ... to be accepted" for Medicaid nursing home coverage. (R. 1259). Further, as Husband points out, this testimony is consistent with

the eligibility requirements set out in the Indiana Administrative Code, of which the trial court could take judicial notice.

Nevertheless, as discussed later in this opinion, we find the trial court's consideration of Wife's eligibility for Medicaid in fashioning this order was improper.

property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

Ind.Code § 31–15–7–5. The statutory presumption must be followed absent evidence that an equal division would *not* be just and reasonable. *Fiste,* 627 N.E.2d at 1372. The party challenging the trial court's property division must overcome a strong presumption that the court complied with the statute and considered evidence of statutory factors. *Id.* Moreover, on appellate review, we consider only the evidence most favorable to the trial court's disposition of marital assets, which is considered as a whole and not item by item. *Livingston v. Livingston,* 583 N.E.2d 1225, 1227 (Ind.Ct.App.1992), *trans. denied.*

■■■ Wife argues that the trial court erred when it found that Husband had presented relevant evidence that an equal division of property would not be just and reasonable in that significant property was acquired by Husband before the marriage. Therefore, Wife concludes, the trial court erred when it failed to follow the statutory presumption for an equal division of marital property. To support her argument, Wife first calculates that the trial court's order awards Husband 90.4% of the marital estate. She then directs us to *Wallace v. Wallace,* 714 N.E.2d 774, 781 (Ind.Ct. App.1999), *trans. denied,* for the proposition that an award to the husband of 86% was held to be an abuse of discretion. According to Wife, *Wallace* is right on point in that the trial court here also failed to consider all of the statutory factors. We cannot agree.

Wife does not, apart from her reference to percentages, attempt to analogize the circumstances here to those in *Wallace,* and we find significant distinctions. First, the facts in *Wallace* do not reflect the initial gross disparity in the amount of assets brought into the marital estate by the parties, as was the case here. Second, *Wallace* involved a situation wherein most of the marital estate was acquired by a familial scheme of gifts and inheritance to the husband during the course of the marriage. We found that the trial court erred in excluding from the marital estate virtually all of the property acquired by gift and inheritance during the marriage when it divided the marital assets. However, there is no evidence that any property in the Newby marital estate was acquired by gift or inheritance. Moreover, the trial court here determined the value of the marital assets at the time of the marriage, without objection, and then ordered any increase or appreciation in the value of the marital assets during the course of the marriage to be equally shared. Therefore, we do not find *Wallace* directly on point.

Because the considerations are statutory, we proceed to consider each as applied to the facts here. As to the first factor concerning the contribution to the acquisition of the property, the evidence is undisputed that the property brought into the marriage by Husband overwhelmingly constituted the creation of the marital property through the process of appreciation. As to the second factor, the evidence established that Husband brought into the marriage 99.2% and Wife .8% of their marital estate at the time of the marriage. With respect to the third factor, Wife was admittedly at a severe disadvantage as to her economic circumstances at the time of the dissolution; however, the disparity in this regard also existed at the outset of the marriage. As to the fourth factor, Wife's conduct during the marriage "as related to the disposition or dissipation" of marital property, I.C. § 31–15–7–5(4), has already been discussed, and augurs unfavorably

for Wife. Finally, as to the fifth factor, their respective earning abilities, both parties had been determined to be disabled at the time of the property division.

The foregoing, with four of five factors preponderating in favor of Husband, supports the trial court's having properly considered the statutory factors for division of marital property.[3] Accordingly, we conclude that the trial court did not abuse its discretion when it determined that Husband had shown that an equal division would not be just and reasonable. *See Fiste.*

### 4. *Failure to Order Direct Maintenance Payments to Wife*

An award of maintenance is within the sound discretion of the trial court. *Riddle v. Riddle,* 566 N.E.2d 78, 82 (Ind.Ct.App.1991), *trans. denied.* Even if a spouse's incapacity materially affects her self-supportive ability, an award of maintenance is not mandatory. *Id.*

> Indiana law provides as follows:
>
> If the trial court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support ... herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

Ind.Code § 31–15–7–2(1). According to Wife, because "there can be no doubt that [she] satisfied her burden of proof in regards to establishing the statutory factors in order for the trial court to award her maintenance," Wife's Brief at 16, it was error for the trial court to not order such payment of maintenance.

Wife's argument overlooks the clear statutory language stating that the trial court "may" order maintenance upon finding a spouse incapable of self support. *See*

*also Riddle,* 566 N.E.2d at 82. Nevertheless, we are unable to ascertain whether the trial court actually ordered Husband to pay spousal maintenance, although it did order Husband to pay up to $400 per month to Wife's healthcare providers. Moreover, we are troubled by the fact that the trial court's findings indicate its improper consideration of Wife's eligibility for Medicaid benefits in fashioning its order.

Although not argued by Wife either to the trial court or on appeal, we find *Lowes v. Lowes,* 650 N.E.2d 1171 (Ind.Ct.App. 1995), to be appropriate for discussion on this matter. In *Lowes,* we held that it was error to terminate a maintenance obligation so that the disabled former spouse could qualify for Medicaid. *Id.* at 1176. We noted that the purpose of the Medicaid program was "to provide medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care." *Id.* at 1175. As a condition of eligibility for Medicaid, an applicant is required to assist the State by assigning to it any legal rights he or she may have to support and payment for medical care from any third party. *Id.See also* 42 U.S.C. § 1396k(1)(a)(A). Hence, a decision about an award of spousal maintenance that is based upon making a husband or wife eligible for Medicaid would have the effect of eliminating or shifting resources to which the disabled spouse would otherwise be entitled. It would also prematurely shift to the taxpayers of Indiana the financial burden of the disabled spouse's care. As we said in *Lowes,* "A former spouse should not be relieved entirely of his maintenance obligation only to qualify the disabled spouse for Medicaid, any more than a noncustodial parent should be relieved of his child support obligation to qualify the custodial parent for Aid to Families with Dependent Children ("AFDC")." 650 N.E.2d at 1176.

---

**3.** J. Mattingly's concurrence expresses concern that consideration of Wife's eligibility for Medicaid might have affected its division of marital property. However, we find no clear evidence that the division of property was influenced by the trial court's consideration of Wife's eligibility for Medicaid.

Accordingly, we remand for the trial court to issue additional findings as to an award of spousal maintenance. The considerations in that regard should not include Wife's eligibility for Medicaid but rather should be limited to the current income and property of the parties.

We affirm in part and reverse and remand in part.

BROOK, J., concurs.

MATTINGLY, J., concurs in result with separate opinion.

MATTINGLY, Judge, concurring in result.

I concur fully in issues 1, 2 and 4. I concur in result on issue 3. I agree that the trial court did not err in ordering an unequal division of the marital estate. However, I am concerned that Wife's eligibility for Medicaid might have influenced the property division as well as the trial court's decision not to award maintenance payments to Wife.

The trial court noted in its findings of fact that Wife had been rejected for Medicaid benefits because she had received temporary maintenance from Husband, and it further noted that if, after the dissolution, Wife "does not receive direct maintenance payments from [Husband] . . . she will qualify for Medicaid. The court finds that [Wife] would be best served by qualifying for Medicaid benefits for her future health care and custodial costs."

To the extent that the unequal division of the marital property was influenced by Wife's Medicaid status, that was error. I believe the reasoning we articulated in *Lowes*, 650 N.E.2d at 1176 is as applicable to marital property division as it is to decisions whether to award maintenance. I would remand for a re-examination by the trial court of the division of the marital property to ensure that Wife's Medicaid eligibility was not a factor in that division.