# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 02 2017, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joshua Flowers
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Andrew Z. Soshnick
Teresa A. Griffin
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Kevin L. King,

*Appellant-Petitioner,*

v.

Mary E. King,

*Appellee-Respondent*

March 2, 2017

Court of Appeals Case No.
29A02-1601-DR-34

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

The Honorable David K. Najjar,
Magistrate

Trial Court Cause No.
29D01-1305-DR-4454

**Altice, Judge.**

**Case Summary**

[1] Nearly four years have passed since Kevin L. King filed his petition for dissolution of his marriage to Mary E. King. During that time, Kevin has engaged in a campaign of subterfuge in an attempt to dissipate the marital estate and secrete property from Mary and their two minor children, whom he has essentially disowned. Additionally, Kevin has been found in contempt for failing to pay child support and for disposing of marital property in direct contravention of the trial court's orders. On appeal, Kevin challenges certain aspects of the trial court's distribution of assets and debts.

[2] We affirm.

## Facts & Procedural History[1]

[3] Mary and Kevin began dating in October 2006 and moved in together the following month, along with Mary's five-year-old son and daughter (the Children). From the start, the couple agreed that Mary would stop working to take care of the family and assist with Kevin's various businesses. Kevin was going through a divorce at the time, which was finalized in November 2007, and he was granted the marital home. After he and Mary remodeled and completely redecorated the home, they moved into it in February 2008 and were married on July 24, 2008. Shortly after the marriage, Kevin adopted the

---

[1] Kevin provides one short paragraph of facts, and the few facts that are provided are not stated in a light most favorable to the trial court's judgment. This is wholly insufficient. *See* Ind. Appellate Rule 46(A)(6) (an appellant's statement of facts "shall describe the facts relevant to the issues presented for review" and "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed").

Children. The family lived a lavish lifestyle until debt, much of which Kevin brought into the marriage, caught up with them. Throughout the marriage, marital expenses, which initially averaged $80,000 monthly but decreased to $20,000 monthly in 2013, were paid out of his various business accounts.

[4] On May 15, 2013, Kevin filed a petition for dissolution of marriage, but he remained in the marital home with Mary and the Children. Mary filed several petitions for protective orders in January 2014, and Kevin followed with a motion for temporary restraining order and for order of possession of the marital residence on February 3, 2014. At a hearing the following week, the parties informed the trial court that they had come to an agreement. The agreement provided: (1) both parties would remain in the marital residence, (2) they would each return any property previously removed, (3) Kevin would provide Mary with $200 per week in spending money; (4) the marital residence would be listed for sale (a short sale) with cooperation of both parties; and (5) Kevin would continue to pay ordinary bills.

[5] Within days of the hearing, Kevin moved Mary's belongings from the master bedroom and bathroom and installed deadbolts on doors to several rooms, including the master bedroom, office, theater room, and storage room. He locked property, including toiletries and daily essentials, in these rooms and away from Mary and the Children. The police were called by Mary on numerous occasions, and she had to damage doors to get to her property.

[6] Kevin moved out of the home in mid-March 2014 and, without Mary's knowledge or consent, took almost everything with him, including furniture, mirrors, fixtures, televisions, speakers, cleaning supplies, and silverware. He even removed built-in appliances, cabinets, and desks, resulting in damage to the home. Mary and the Children were ultimately left with beds, a chair, and a patio set in their 8000 square foot home. He also had the home's boat dock with lift station on Geist Reservoir removed from the property. Kevin's actions significantly lowered the value of the marital residence.

[7] After moving out, Kevin did not regularly pay the utility bills and mortgage, cancelled the homeowners and car insurance, and refused to contribute to most expenses for the Children. He moved into a rental home on Geist Reservoir costing $5000 a month and generally continued his expensive lifestyle. His rent was paid by his mother through the Inner Printing, Inc. corporate bank account. This company was nominally in his mother's name. In early 2014, the Inner Printing bank account had a balance of $90,000.

[8] In light of Kevin's actions, Mary filed an emergency motion for a provisional order, and a hearing on that motion commenced on April 21, 2014. Kevin denied many of the allegations made by Mary and accused her of not returning certain property. At the conclusion of the hearing on May 30, 2014, the trial court granted Kevin parenting time with the Children and, after imputing income to both parties, ordered him to pay $350 per week in child support. The court also ordered Kevin to restore the utilities to the home and keep the payments current. With respect to personal property, the court directed the

parties to each make a list of any items they believed had been removed or secreted from the marital residence. They were then directed to exchange their lists and, within 30 days, return any such property either to the marital residence or a storage facility for proper accounting.

[9]     Mary complied with the trial court's order and returned the limited property she had removed from the residence. Kevin, however, defied the order at nearly every turn. He did not pay any child support, and he filed a separate action attempting (unsuccessfully) to void his adoption of the Children. Additionally, he did not consistently pay the utility bills and did not return any of the property he had taken from the home. In fact, after the hearing, Kevin sold much of the furniture and other property at a consignment shop or through other avenues.

[10]    At a contempt hearing on September 29, 2014, the trial court found Kevin in contempt for nonpayment of child support and for disposing of marital property in violation of the provisional order. The court found this to be "a classic case of underemployment in order to avoid paying child support." *Transcript* at 222. The court continued:

> The history over the course of this marriage…indicates that you are certainly capable of making lots more than that. The evidence that is also before the Court with regard to your spending habits at the country club also would indicate that you are able, certainly, to afford a lot more than what you are indicating to the Court….

> With regard to the personal property…, the evidence that is before the Court is that some 24 hours after my order went out, a bunch of that missing property suddenly showed up at a consignment store. Curious.

> Mr. King, you are in contempt there as well. As a sanction for your contempt, sir, because I'm not quite sure that you understand that the Court does mean what it says, I'm going to order that you serve 30 days in the Hamilton County Jail. There will be a cash bond in the amount of the outstanding balance of your child support arrears in the amount of $6,950.

*Id*. at 223-24. The trial court then provided Kevin with 24 hours to pay the arrearage and avoid jail. Kevin was also directed to comply with the provisional order regarding personal property by returning the items and/or reporting to the court those items that cannot be returned to the marital home. Kevin paid the arrearage as ordered by the court, but he did not return the vast majority of the marital property or account for any sold property.

[11] The final hearing took place on April 13 and August 10, 2015. A real estate broker testified that the marital residence had been listed in July 2014 for $1.65 million, and there was a current offer pending for $1 million. The home was sold in a short sale by the bank[2] after the first day of the final hearing, and Mary and the Children moved into a rental.

---

[2] Kevin had a foreclosure judgement against him in the amount of $1.6 million for the marital residence.

[12] Kevin testified that he had a substantial amount of personal debt (over $2 million excluding the foreclosure judgment) and no assets aside from about $5000 in household furnishings and possessions. Kevin conceded that the majority of his debt was incurred prior to his and Mary's marriage.[3] He indicated that he wanted Mary to share in certain credit card debt (totaling approximately $254,000) but acknowledged that these cards were used for both personal and business expenses. Additionally, he testified that the unsold items at the consignment shop had been returned to Mary but that all other furniture and belongings were either still in his possession or had been sold. Kevin claimed annual income of only about $30,000, all from Inner Printing – a company of which he owned 99% and his mother owned 1%. Although Kevin did not make regular child support payments, his mother made several lump sum payments on his behalf.

[13] Mary testified that throughout the marriage she worked for Kevin's various businesses without pay, as well as maintained their home. The family's personal debts were regularly paid with corporate funds. Kevin started several of his businesses in other family member's names, including Mary's, due to his lack of credit. Mary testified that on January 28, 2014, there was a corporate bank account with over $90,000 in it.

---

[3] For example, Kevin had $1.42 million in debt related to one boat and $470,000 for another boat, both of which were purchased prior to the marriage.

[14]  In January 2015, Mary obtained full-time employment making $28,000 a year. Mary's family stepped in during the dissolution proceedings to help pay bills, as Kevin did not regularly pay utility bills or child support as directed by the court. Mary documented approximately $39,000 in ordinary household expenses she incurred during the dissolution action.

[15]  With respect to personal property, Mary testified that Kevin had returned only a sofa and four chairs. She estimated, conservatively, that the garage-sale value of the property taken by Kevin and never returned was $100,000. Additionally, Mary testified that she did not dispose of and had returned all of the property (rugs, wine, and sports memorabilia) she had removed from the marital residence as ordered by the trial court.

[16]  On October 5, 2015, the trial court entered its decree of dissolution of marriage (the Decree). With respect to child support, the court found that Kevin was voluntarily underemployed with the education, experience, and ability to earn at least $100,000 per year. The court observed that Kevin continued "to operate much of his life in a lifestyle commensurate with such income." *Appellant's Appendix* at 27. Kevin was ordered to pay $337 per week in child support, as well as an arrearage of $4500.

[17]  Particularly relevant to this appeal, the Decree provided the following with respect to property:

> 19. The Court finds that there is a great disparity in the testimony regarding the property of the marital estate. Both parties have

testified that the other party has removed or secreted property from the other.

20. The Court finds that [Kevin] has engaged in actions to reduce the size of the marital estate, specifically, that he has sold and given away marital property, and allowed family members to do the same. This Court ordered [him] to return items to the marital residence…. [Kevin] has not complied, nor has he completed an accounting of such items as previously ordered.

21. The Court finds that there existed a business account with a balance of approximately $90,000 as of February 2014. The Court finds that this is a marital asset and should be divided equally….

22. The Court will further order [Kevin] to return all of the personal property listed on Respondent's Exhibit A (attached) to [Mary] within ten (10) days of this Order. The Court finds that the value of such items is not less than $85,000.00. Should [Kevin] not return the items of property, he shall be obligated to pay to [Mary] the sum of $85,000.00.

23. The Court finds that [Mary] paid a number of expenses related to the marital residence or the children, for which [Kevin] was obligated. The Court finds that [Kevin] should reimburse [Mary] for these expenses in the sum of $39,248.71….

24. [Kevin] shall have as his sole property the assets and debts related to [all of his businesses]….

**\*\*\*\***

27. Except as specifically noted above, [Kevin] shall retain as his sole property the personal property currently in his possession….

28. Except as specifically noted above, [Mary] shall retain as her sole property the personal property currently in her possession….

29. [Kevin] shall be responsible for any debts and any credit cards issued in his name.

30. [Mary] shall be responsible for any debts, payment of her student loans, and any credit cards issued in her name.

\*\*\*\*

32. The Court notes that Indiana law presumes an equal division of the marital estate. The Court, however, finds that this presumption has been rebutted in this case due to a number of factors. Specifically, the Court finds that, historically, [Kevin] has had a far greater earning potential than [Mary]. Additionally, during the course of this litigation, the Court has found that [Kevin] has engaged in actions to dissipate the marital estate, to secret [sic] property away from [Mary], and has failed to abide by Court orders to preserve the marital estate. Although the Court does not have sufficient information from which to determine the exact value of the marital estate, and cannot therefore determine whether each party has an equal share, the Court does find that the totality of the circumstances in this case justify an unequal distribution of the marital estate in favor of [Mary].

\*\*\*\*

*Id*. at 30-32.

[18] After an unsuccessful motion to correct error, Kevin initiated this appeal challenging certain aspects of the property distribution. We will provide additional facts below as needed.

**Discussion & Decision**

[19] On appeal, Kevin challenges the trial court's award of $85,000 to Mary for personal property removed from the marital residence, the division of marital debt, and the division of funds in a corporate bank account. His arguments on appeal are poorly developed and essentially boil down to improper requests for us to reweigh the evidence and judge witness credibility.

[20] When reviewing a challenge to the trial court's division of marital property, we determine whether the evidence supports the findings, and then whether the findings support the judgment. *Goodman v. Goodman*, 754 N.E.2d 595, 599 (Ind. Ct. App. 2001). We review such a challenge for an abuse of discretion, and consider only the evidence favorable to the judgment. *Id.* Due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). We will reverse only if the trial court's judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn from those facts. *Goodman*, 754 N.E.2d at 599.

[21] In Indiana, there is a well-established preference for granting latitude and deference to our trial courts in family law matters. *Steele-Giri*, 51 N.E.3d at 124. As an appellate court, we are in a poor position to look at a cold transcript of

the record, and conclude that the trial court, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. *Id*. It is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. *Id.*

[22] The trial court's discretion in the disposition of marital property is subject to a statutory presumption in favor of equal distribution. *Goodman*, 754 N.E.2d at 599. Ind. Code § 31-15-7-5, however, provides that this presumption may be rebutted by evidence that an equal division would not be just and reasonable, including evidence of the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
>> (A) before the marriage; or
>>
>> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

*Id*. "The party challenging the trial court's property division must overcome a strong presumption that the court complied with the statute and considered evidence of statutory factors." *Goodman*, 754 N.E.2d at 599 (quoting *Newby v. Newby,* 734 N.E.2d 663, 669 (Ind. Ct. App. 2000)).

[23] We initially address Kevin's brief argument that the trial court abused its discretion by failing to consider each of the statutory factors in determining that an unequal division of assets was just and reasonable. Specifically, he contends that the trial court failed to consider that he brought the majority of assets (i.e., the marital residence and furnishings) into the marriage. It is true that the trial court did not address this factor in the Decree, but a trial court's exclusion of a factor from its written findings does not mean that it did not consider the factor. *See Eye v. Eye*, 849 N.E.2d 698, 703 (Ind. Ct. App. 2006); *Shumaker v. Shumaker*, 559 N.E.2d 315, 318 (Ind. Ct. App. 1990). The court addressed a number of the statutory factors and ultimately determined that the totality of the circumstances justify an unequal distribution in favor of Mary. The trial court's conclusion in this regard is supported by the record, and Kevin's claim that one factor would have altered this determination rings hollow, especially in light of the amount of debt he brought into the marriage.

[24] With respect to dissipation of assets, Kevin acknowledges the evidence of his contemptuous behavior and selling of marital property but asserts that he also presented evidence that Mary failed to return certain property. Mary directly disputed his claims. Thus, contrary to Kevin's assertion that the trial court ignored the evidence he presented, it is apparent that the trial court simply did not believe him. As the trier of fact, this was well within the trial court's province. *See DeSalle v. Gentry*, 818 N.E.2d 40, 44 (Ind. Ct. App. 2004) ("it falls solely within the province of the trial court to determine the witnesses' credibility and to weigh the evidence from their testimony"). We reject Kevin's bald invitation for us to reweigh the evidence. Accordingly, Kevin has failed to establish an abuse of discretion regarding the award to Mary of $85,000 for unreturned personal property.

[25] Kevin next challenges the trial court's division of marital debt, in which the trial court made each party responsible for any debts or credit cards issued in their individual name. Kevin claims that this resulted in him taking on "an exhorbatant [sic] amount of debt", some of which Mary benefitted from and was incurred during the marriage. *Appellant's Brief* at 11. Again, this amounts to an improper request for us to reweigh the evidence. The evidence favorable to the judgment establishes that the majority of the debt was brought into the marriage by Kevin, and he actively dissipated assets during the marriage. Moreover, as Mary observes, she did not leave the marriage debt free, as the trial court assigned to her all expenses related to the Palace Premier Timeshare, indebtedness related to personal property in her possession, and credit card and

student loan debt in her name. Kevin has failed to establish that the trial court abused its broad discretion when assigning marital debt between the parties.

[26] Finally, Kevin makes a bizarre argument related to the trial court's equal division of funds in one of his corporate bank accounts for Inner Printing. In essence, he contends that the $90,000 in this account was improperly included in the marital estate because "[t]here was no mention by [Mary], nor the court about piercing a corporate veil in order to gather the funds located in the corporate bank account." *Appellant's Brief* at 15. He continues, "[b]ecause no action was taken to request to pierce the veil, the veil remains." *Id*.

[27] Kevin apparently does not understand the concept of piercing the corporate veil, and we do not endeavor to educate him here.[4] The evidence favorable to the judgment reveals that throughout the marriage Kevin owned a number of companies and regularly paid personal and marital expenses with corporate funds. In early 2014, one corporate bank account had a balance of $90,000.[5] This was an account for Inner Printing, a company nominally placed in his mother's name and of which he was a 99% shareholder. Additionally, there

---

[4] A corporate veil protects shareholders from being "held personally liable *for acts attributable to the corporation*." *See Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994) (emphasis supplied).

[5] Kevin did not dispute this fact at trial or present any evidence related to these funds. To the extent Kevin attempts to challenge the valuation of this asset in his reply brief, we note that new arguments may not be asserted for the first time in a reply brief. *See I.A.E., Inc. v. Hall*, 49 N.E.3d 138, 153 (Ind. Ct. App. 2015), *trans. denied*. In his opening brief, he argued only that the funds were not a marital asset subject to division because Mary could not pierce the corporate veil.

was evidence presented from which one could reasonably infer that Kevin was secreting money through Inner Printing.

[28] We agree with Mary that Kevin's contention that the corporate veil must be pierced in order for Mary to receive a share of the account is a red herring. Thus, Kevin has made no showing on appeal that the trial court erred in equally dividing the funds between the parties.

[29] Judgment affirmed.

[30] Riley, J. and Crone, J., concur.